James Paul MARTIN, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

June 20, 1979.

Certiorari Denied by Supreme Court
Aug. 6, 1979.

County Criminal Court of incest and was sentenced to the penitentiary for not less than 10 years nor more than 21 years.

The defendant assigns several errors relating to the admission into evidence of the testimony of certain witnesses, and also alleges that he should have been allowed to question witnesses about the victim's use of marihuana. We find no merit to the assignments and the judgment is affirmed.

The State's evidence, as accredited by the verdict of the jury, established that the defendant commenced a pattern of sexual acts towards his stepdaughter, the victim herein, when she was 11 years of age. These acts consisted of touching and fondling the child and progressed to taking showers with her. At the age of 13, she was forced by the defendant to have sexual intercourse with him. Other acts of intercourse followed, and at the age of 15, the victim became pregnant and gave birth to a child on June 20, 1975. When told by the victim that she was pregnant, the defendant said, "Then, I'm the father." Statements by the defendant in the presence of the victim and her mother also indicated an acknowledgment that he was the father of the child.

After the birth of the child, the victim continued to live in the home with the defendant and the rest of the family. According to the victim's testimony, the defendant again had forcible sexual intercourse with her on August 6, 1977, and August 12, 1977, the State electing to prosecute on the August 6th occurrence.

The defendant's wife testified that on the August 6th date, she awoke during the night and discovered the defendant, dressed in his underclothing, lying asleep on and at the foot of the victim's bed.

Other witnesses corroborated the victim's testimony about the defendant taking showers with her.

The victim testified that on one occasion in the summer of 1974, her stepsister was visiting her, and that after they went to bed the defendant took her (the victim) out of bed into the bathroom and raped her.

William B. Bruce, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., David Raybin, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, James Paul Martin, was convicted in the Davidson

The stepsister testified that on this occasion, the defendant entered the room, gave her (the stepsister) more than a friendly kiss, and when she protested he left, but later returned and took the victim out of the room.

There was testimony by a gynecologist that after the first act of sexual intercourse occurred, he examined the victim and discovered her hymenal ring was not intact and found other symptoms consistent with her testimony.

The defendant testified and denied that he had ever had sexual intercourse with the victim. Further, he denied ever fondling her or taking showers with her.

■ The defendant insists that it was error to allow into evidence the testimony of his wife because the acts she observed and statements made by him to her about those acts arose out of the marital relationship and were thus privileged. He relies upon the doctrine expressed in *Norman v. State*, 127 Tenn. 340, 155 S.W. 135 (1913), that the sanctity of the home is more important to society than is conviction of crime by the use of a spouse's testimony. However, Tennessee recognizes that the marital privilege rule does not attach where the charge involves crimes of violence committed by one spouse upon the other spouse or crimes of violence committed upon the children of the relationship or of either spouse. *Adams v. State*, 563 S.W.2d 804 (Tenn.Cr.App.1978).

> In *Adams v. State, supra,* the court said: We believe that "marital communications," whether by conduct *or by verbal statement,* which arise from an act of violence by a spouse committed against the child[ren] of either spouse should constitute an exception to the marital privilege, because such "communications" fail to satisfy the conditions underlying the creation of the privilege. To the extent that confidentiality concerning such violence *would foster a stronger relationship* between spouses, it would clearly be a relationship in direct opposition to the rational norms and the goals of a family-oriented society. The benefit to be gained by society from the public exposure of the mistreatment of children far outweighs any injury that could be caused to the marital relationship by disclosure of the communications. (emphasis added). 563 S.W.2d at 809.

■ Obviously, the defendant's conduct towards the victim in this case concerned acts of violence, and we hold that the wife's testimony was properly admitted into evidence by the court. Additionally, we would add that a substantial part of the wife's testimony in the present case concerned matters she observed outside the marital relationship, and some of the statements made by the defendant to her to which she testified were made in the presence of the victim. Our cases have recognized that the privilege does not extend to acts which a spouse observes without the other's knowledge, *Burton v. State*, 501 S.W.2d 814 (Tenn.Cr.App.1973), nor does it apply when the conversations and communications between the husband and wife have taken place in the presence of third persons, *Hazlett v. Bryant*, 192 Tenn. 251, 241 S.W.2d 121 (1951).

We find that the marital privilege rule was not violated in this case.

Another complaint by the defendant is that the trial court erred in declaring the defendant's wife to be a hostile witness.

At the inception of the prosecution of this case, the defendant's wife gave a written statement to the police which contained devastating, incriminating allegations against him. Among the more salient of these are the following:

. . . "she and Jim admitted he was the father."

. . . "I hadn't known Jim was still having relations with Kathy since Vickey was born until *August 6, 1977 during the night* . . ."

. . . "When I came out, he was lying in the bed with Kathy." [August 6, 1977]

Prior to the commencement of the trial, the wife informed the district attorney general she wished to change her statement in 3 places. At the trial she made 15 addition-

al changes in her statement, including a denial of the first two statements set out above and a modification of the last to show her husband was "lying on the foot of Kathy's bed," rather than "lying in the bed with Kathy."

The defendant and his wife had separated after the initiation of the charges against him and she had filed a divorce action against him. However, prior to the trial of this case, they had reconciled and were living together as man and wife, a condition calculated to induce her to moderate her previous damaging statements.

The necessity to corroborate the testimony of the victim concerning the defendant's sexual contact with her continued throughout the case and, particularly, at the time the wife testified, the necessity was critical.

■ When a party calls a witness who turns hostile, such party may impeach the witness, *Montesi v. State*, 220 Tenn. 354, 417 S.W.2d 554 (1967), if the witness is indispensable or takes the party by surprise. *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948). The hostility of the witness may be shown through questioning the witness or by other circumstances. *Wilson v. Tranbarger*, 218 Tenn. 208, 402 S.W.2d 449 (1965).

■ The evidence in this record is sufficient to show that by the wife's actions and the circumstances of her reconciliation with her husband, she had become hostile to the State's prosecution. Her testimony at that stage of the trial was crucial not only to corroborate her daughter's testimony but also to show statements by the defendant indicating guilt, and to show acts consistent with his guilt in this matter. The trial judge did not err in holding the defendant's wife to be a hostile witness.

We are not, however, satisfied with the procedure used in allowing the wife to change her statement or in allowing the entire statement to be submitted to the jury.

■ The editing and changing process was done in the presence of the jury. This was erroneous. The editing should have

been done out of the jury's presence and the entire statement should not have been submitted to the jury after the completion of her testimony. At the most, only those portions of the original statement which showed inconsistencies in her trial testimony should have gone to the jury. Those did of course as part of the entire statement. Other portions which were basically consistent with her testimony should not have been given to the jury. Those portions, however, were not significantly incriminatory and the error cannot be said to have affected the outcome of the trial in view of the overall evidence of guilt.

■ The defendant's complaint that the trial judge refused to give a contemporaneous instruction on how to receive impeaching evidence when offered points up what is the best practice. However, the failure to do this is not fatal if the trial judge properly instructs the jury in his general charge on how such evidence is to be considered. *See Edwards v. State*, 540 S.W.2d 641 (Tenn.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 777 (1977).

■ The trial judge informed the jury in his general charge they could not consider the impeaching evidence of prior inconsistent statements as establishing the truth of the statement or as substantive evidence. This comports with the law on this subject. It is presumed that the jury, did not disregard the instructions of the court. *Klaver v. State*, 503 S.W.2d 946 (Tenn.Cr.App.1973).

We would add that aside from the testimony of the defendant's wife, the other evidence in this record abundantly establishes the defendant's guilt of this crime.

The defendant complains of the introduction of the testimony of a physician who examined and treated the victim soon after the occurrence of the first act of sexual intercourse, and he complains also of the testimony of the victim's stepsister. The defendant argues that the testimony of these witnesses showed other acts which were not charged in the indictment.

The physician examined the victim soon after the first sexual intercourse had taken place. The victim was 13 years of age at the time. The physician found her hymenal ring to be broken, the implication being, of course, that she had engaged in sexual intercourse. Additionally, he discovered vaginal bleeding and other indications of sexual contact.

The stepsister's testimony concerned an episode that occurred when the defendant came into a bedroom where the stepsister was sleeping with the victim and made amorous advances toward the stepsister but was repulsed. He subsequently reentered the room and removed the victim therefrom, and as we have previously stated, the victim's testimony was that on this occasion the defendant had taken her into the bathroom and raped her.

■ In prosecutions of this nature, evidence of incestuous acts with the same person prior to the act relied upon in the indictment may be shown to illustrate the relation existing between the defendant and the victim. *Sanderson v. State*, 548 S.W.2d 337 (Tenn.Cr.App.1976).

■ The defendant further argues that the testimony of the stepsister was inadmissible because the acts toward her showed a separate and distinct offense against her and was not admissible under the rule as stated in *Sanderson*. If the act had been committed at a place separate and apart from the bed in which the victim lay, the defendant's claim would have more strength. However, the acts are inseparable from the circumstances tending to show that they culminated in an incestuous episode with the victim immediately thereafter. Under these circumstances, this evidence was admissible.

■ Finally, we find no merit to the defendant's contention that the trial judge erroneously disallowed testimony about the use of marihuana by the victim. There is no connection between the use or possession of marihuana and the veracity of a witness. Such use, even if established, would not have reflected on the victim's truthfulness or untruthfulness. *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976); *Hatchett v. State*, 552 S.W.2d 414 (Tenn.Cr.App.1977).

We overrule all of the defendant's assignments of error and the judgment of the trial court is affirmed.

DAUGHTREY and TATUM, JJ., concur.