**STATE of Tennessee, Appellee,**

v.

**Johnny REECE, Appellant.**

Supreme Court of Tennessee.

Aug. 30, 1982.

Fletcher L. Ervin, Newport, for appellant.

William W. Hunt, III, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, for appellee.

## OPINION

COOPER, Justice.

Appellant Johnny Reece was convicted of five counts of armed robbery and was sentenced to ten years imprisonment on each count, with two of the sentences to be served consecutively. On affirmance of the judgment by the Court of Criminal Appeals, we granted appellant's application for permission to appeal to determine whether or not the failure of the trial court to instruct the jury that testimony offered by the State to impeach two of its witnesses could be considered only on the issue of credibility and not for the truth of the facts stated was reversible error in the absence of a special request for the instruction.

The armed robberies for which appellant stands convicted occurred on May 19, 1979. Several persons had gathered near Newport, Tennessee, to hold "cock fights." These "sportsmen" were surprised by several masked men who robbed them at gunpoint and escaped with a large quantity of cash, jewelry, and other valuables.

Officers investigating the robbery noticed a man climbing up a riverbank beside the Asheville Highway less than two miles from the scene of the robberies. The man, who subsequently was identified as appellant's brother, Robert Reece, was arrested after the officers discovered over $6,000.00 in

rolled up bills in his possession. Later that day, the sheriff stopped a van on the highway near the scene of the robberies. When he found it occupied by appellant, appellant's wife, and appellant's brother-in-law, Billy Brimer, and they could not satisfactorily explain their presence in the area where the robberies occurred, the sheriff arrested the three on a charge of "accessory after the fact to robbery." These charges were later dismissed and appellant was indicted for armed robbery.

At trial Billy Brimer was a witness for the prosecution. He testified that on the day of the robberies he had gone to appellant's house near Knoxville, that appellant's wife and children were there, but that appellant was not. According to Brimer, his sister received a telephone call from appellant. She then asked him to drive her to Newport to pick up the appellant. Brimer further testified that, after picking up the appellant, he stopped his van at a roadside park where the appellant hid three rings in the master cylinder of the van. Brimer voluntarily turned these rings over to his attorney who delivered them to the police prior to trial. The rings were identified at trial as part of the jewelry stolen in the robberies.

The appellant's proof showed that he had been at home on the morning of the robberies and had driven to Newport with his wife and Brimer after receiving an anonymous telephone call claiming that his brother Robert had been shot and was lying along the road near Newport.[1] Appellant, his wife, and two disinterested witnesses testified in support of his alibi.

At the close of appellant's proof, the State called as rebuttal witnesses two of appellant's children, Tammy Reece, age seventeen, and Paula Reece, age thirteen. These witnesses testified that their father had been at home on the morning of the robberies and had left hurriedly with their mother and uncle after receiving a telephone call. The trial judge then permitted the State to treat them as hostile witnesses and to question them concerning certain contradictory statements which they were alleged to have made to Officer Suzanne Fawver of the Knox County Sheriff's Department. The State then called Officer Fawver to prove the prior inconsistent statements. The following is representative of her testimony:

Q: All right and what did she [Paula Reece] tell you?

A: She told me that her father had been gone on Friday night and hadn't never come home. And that her mother was home that morning and that she was cutting her uncle's hair. That morning. And that they got a phone call, and they left in the middle of the haircut and rushed out and said they had to go meet the father, and they'd be back in a few minutes. (Tr. 307–308)

Appellant's counsel did not properly object to the admission of this testimony and failed to ask for a contemporaneous instruction informing the jury that Officer Fawver's testimony could be considered only for impeachment purposes, and not as substantive evidence of the appellant's guilt. Nor did counsel tender a special request asking that the instruction be included in the judge's charge to the jury at the close of the evidence. The instruction never was given to the jury.

The Court of Criminal Appeals recognized that the trial court "should have given a more complete instruction by telling the jury that the children's inconsistent statements were not to be considered as substantive evidence, but only could be considered as going to their credibility." Nevertheless, that court held that appellant was not entitled to a new trial since he had failed to take any action to prevent or nullify the harmful effect of the error. *See* T.R.A.P. 36(a). The Court of Criminal Appeals further held that the omission of a jury instruction on this subject did not af-

---

1. Robert Reece committed suicide prior to trial, but left a suicide note admitting his guilt in the robberies and exonerating the appellant.

fect the outcome of the trial and therefore was harmless error. *See* T.R.C.P. 52(a).

■ Our cases clearly establish that prior inconsistent statements offered to impeach a witness are to be considered only on the issue of credibility, and not as substantive evidence of the truth of the matter asserted in such statements. *McFarlin v. State*, 214 Tenn. 613, 381 S.W.2d 922 (1964); *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948). Accordingly, the trial judge should give a contemporaneous instruction to this effect when the impeaching statements are offered. *Martin v. State*, 584 S.W.2d 830, 833 (Tenn.Ct.App.1979).

■ While recognizing that appellant was entitled to the instruction upon request, the State insists that the Court of Criminal Appeals did not commit reversible error in holding that the trial court's failure to give the instruction in the absence of a request was harmless error. As a general rule, no assignment of error based upon omission or inadequacy of the judge's instructions to the jury will be considered unless a special request was tendered, pointing out the appellant's contention as to the error. *Crawford v. State*, 197 Tenn. 411, 273 S.W.2d 689, 693 (1954). However, if the State's case is weak and the prior inconsistent statements are extremely damaging, the failure to give the limiting instruction may amount to fundamental error constituting grounds for reversal, even in the absence of a special request. *See United States v. Lipscomb*, 425 F.2d 226 (6 Cir. 1970).

In *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948), wherein this court reversed a conviction for incest, it was held that the prior inconsistant statements of the defendant's daughter, in which she named the defendant as the father of her child, although admissible for impeachment purposes, could not be used as substantive evidence to corroborate the defendant's pretrial confession. In so holding, we stated that to allow the use of the daughter's prior confession to corroborate the defendant's confession would be to hold that hearsay evidence not under oath took precedence over evidence given by the same witness under oath and on the witness stand. That case also contains the following statement:

> The learned trial judge carefully limited the purpose for which the pretrial confession was admissible. It would have been reversible error for him to leave the contradictory statements of the daughter to the jury to decide whether she was telling the truth at one time or the other. 215 S.W.2d at 815.

■ In the present case, the prior contradictory statements of appellant's daughters struck at the very heart of his alibi defense. The State's case hinged largely on the testimony of Billy Brimer who admitted his own possession of the three rings taken in the robberies. No witnesses were able to identify appellant as one of the robbers, although one witness thought that one of the robbers "got around" like appellant. After full and careful consideration of the facts set forth in the record, we believe that the trial court's failure to give the proper limiting instruction left the jury free to consider the prior inconsistent statements of the Reece children as substantive evidence of the appellant's guilt. Moreover, we are persuaded that the jury did in fact consider the impeaching statements for the truth of the matters asserted in reaching their verdict. Under the facts in the record before us, we cannot say beyond a reasonable doubt that the failure to instruct the jury on the limited purpose for which the children's prior inconsistent statements could be considered did not result in substantial prejudice to appellant which affected the results of the trial.

Our holding is limited to those exceptional cases in which the impeaching testimony is extremely damaging, the need for the limiting instruction is apparent, and the failure to give it results in substantial prejudice to the rights of the accused. *See U.S. v. Lipscomb*, 425 F.2d 226 (6 Cir. 1970); *United States v. Garcia*, 530 F.2d 650 (5 Cir. 1976). The judgment of the Court of Criminal Appeals is reversed and the case is remanded for a new trial.

HARBISON, C.J., and FONES, BROCK and DROWOTA, JJ., concur.