**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
FEBRUARY SESSION, 1999**

**FILED**

**April 16, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 01C01-9711-CR-00535** |
| **Appellee** | ) | |
| | ) | **PUTNAM COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. LEON BURNS, JR., Judge** |
| **LON S. WALKER,** | ) | |
| | ) | **(Second Degree Murder)** |
| **Appellant** | ) | |

For the Appellant:

**John E. Herbison**
Attorney at Law
2016 Eighth Avenue South
Nashville, TN 37204

(ON APPEAL)

**William A. Cameron**
Attorney at Law
100 South Jefferson Avenue
Cookeville, TN 38501

(AT TRIAL)

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Daryl J. Brand**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**William Edward Gibson**
District Attorney General

**Ben Fann**
**Lillie Ann Sells**
Asst. District Attomeys General
145 S. Jefferson
Cookeville, TN 38501

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Lon S. Walker, appeals as of right, his conviction by a Putnam County jury for second degree murder. The trial court imposed a sentence of twenty years in the Department of Correction. On appeal, the appellant raises three issues for our review:

I. Whether the evidence is sufficient to sustain a conviction for second degree murder;

II. Whether the trial court erred in instructing the jury regarding prior inconsistent statements; and

III. Whether the trial court properly charged the jury regarding the impeachment of a witness.

After a review of the record, the judgment of conviction is affirmed.

## Background

On Saturday, October 14, 1995, shortly after twelve noon, James "Howard" Harp and his brother Jerry traveled by taxi to the mobile home of the appellant. The Harp brothers had been acquainted with the appellant for approximately one month. The three men began drinking and, after realizing their stock of alcohol was almost depleted, drove to Jackson County to purchase additional alcohol. On the way back to the Cookeville residence of the appellant, the trio stopped at the home of Stacy Patzer, a "drinking buddy" of the appellant, who lived alone while her husband was in jail. Stacy had never before met the Harp brothers. After enjoying a few drinks with her visitors, Stacy agreed to accompany the men back to the appellant's mobile home to continue their socializing.

After arrival at the appellant's residence, Jerry Harp observed that both his brother, Howard, and the appellant were "pretty well lit." While the others continued to imbibe, Jerry Harp left the appellant's home twice: once to visit a friend and once to drive Stacy home to check on her dogs. Upon returning from the trip to Stacy's home,

Jerry noticed Howard and Stacy flirting with one another. Howard kissed Stacy and sat in her lap. Apparently, the casual flirtation between Howard and Stacy upset the appellant, who informed Jerry Harp that he was mad that Stacy and his brother were "hitting it off." Later that evening, the appellant showed Jerry his black snubnose .38 pistol with the filed-down hammer. Jerry Harp subsequently left the trailer and did not return.

Eric Christensen, a friend of the appellant's, stopped by the trailer after completing his shift as a cook at Waffle House. When Christensen arrived, Jerry Harp had already left and the appellant, Stacy, and Howard were drinking alcohol and listening to music. According to Christensen, Howard and Stacy were extremely intoxicated, while the appellant only had a "buzz." Stacy was using the telephone and appeared upset. Howard was trying to comfort her. The appellant expressed his displeasure over Howard's efforts to console Stacy and "told Howard to mind his own business." He then shook his fists at Howard and threatened "that someone was going to get hurt." Christensen left shortly thereafter.

Later that evening, the appellant left the mobile home and wandered over to the home of his neighbor, Benjamin Johnson. Johnson was working outside when the appellant, carrying a rum and Coke, appeared. The appellant told Johnson that he might need his help in a little while in "kicking this guy's ass." Johnson laughed off the appellant's comments as a joke and changed the subject.

At about 10:50 p.m., Stacy was sitting on a stool on the living room side of the bar dividing the living and kitchen areas. Howard was standing less than three feet away, facing her. The appellant was standing at the end of the bar on the kitchen side opposite Howard. Immediately before the shooting, Stacy related "we were all sitting, talking, laughing, having a good time." Suddenly and without any warning, Stacy "caught a glimpse" of a gun in the appellant's hand. The appellant "turned and then he

3

turned back around and he brought [the gun] up to Mr. Harp's temple. . . [and] shot Mr. Harp." After being shot, the victim fell straight back onto the floor.

A very intoxicated Stacy screamed, picked up the telephone, and attempted to dial "911." Her efforts to obtain assistance were futile as the appellant pressed the button on the telephone to cut off her call and told her that "he would take care of it; Howard was dead." The appellant told Stacy that Howard had shot himself. Stacy ran to the bathroom and locked the door. The "911" operator called back and Stacy answered the telephone located in the bathroom. She informed the operator that Howard Harp had committed suicide.

When Cookeville Police Officers arrived at the appellant's trailer, they found Howard Harp laying in a pool of blood, barely breathing. He was immediately transported to a hospital, where he subsequently died from a single gunshot wound to the head. Stacy Patzer, obviously intoxicated, was hysterical, screaming, and crying. The appellant was standing in the driveway and calmly informed officers that Howard had committed suicide.

In processing the crime scene, officers found a .38 Smith and Wesson handgun in the kitchen sink underneath a Coca-Cola cup. The pistol contained one spent round and five live rounds. The weapon also had a filed-off hammer. When questioned by the officers, the appellant denied ever seeing the weapon before the shooting and stated that Howard Harp must have brought the weapon with him. The appellant also explained that, at the time of the actual shooting, he was down the hall in the bathroom, so he did not know exactly what had happened. Contemporaneously, Stacy made repeated comments that Howard had committed suicide. She reiterated these statements to her husband, who was in jail, and to another friend. However, two days after the shooting, Stacy Patzer recanted her previous statements regarding the incident and informed Detective James Lane that the appellant had shot Howard Harp.

4

She explained that her prior statements were influenced by her intoxicated and hysterical state and that, when she was told by the appellant "that [Howard] had committed suicide, . . . I guess I just wanted to believe it."

At trial, evidence was introduced that the gun used in the shooting death of Howard Harp belonged to the appellant. The original owner of the weapon verified the weapon's unique serial number, "666," and the fact that the hammer had been filed down. He testified that he had sold the unregistered weapon to the appellant several months prior to the incident. Additionally, James Harp testified that the gun recovered in the kitchen sink after the shooting was the very same weapon that the appellant had shown him earlier that evening. Red splatters on the appellant's t-shirt, which he explained as spaghetti sauce, were later determined to be human blood. No fingerprints were recovered from either the weapon or the ammunition, and, gunshot residue analysis revealed "elements indicative of gunshot residue absent" as to both the appellant and Stacy and "inconclusive" as to Howard Harp.

The defense introduced voluminous records to illustrate Howard Harp's history of psychological problems and suicidal tendencies. Indeed, his brother Jerry conceded on cross-examination that, on the morning of the shooting, Howard had stated that he was going to kill himself. Jerry also conceded that almost every time his brother consumed alcohol he would become depressed and talk about killing himself. The defense also attempted to discredit Stacy Patzer's in-court testimony by implying that she only swayed from her original report of "suicide" in an effort to assist her husband in his own criminal charges.

Based upon this evidence, the jury found the appellant guilty of second degree murder.

## I. Sufficiency of the Evidence

In his first assignment of error, the appellant contends that the evidence is insufficient to sustain his conviction for second degree murder. The thrust of his challenge to the sufficiency of the evidence relates to the substantial inconsistencies between Stacy Patzer's trial testimony and her statements made to various law enforcement officials and other persons soon after the incident. Although the appellant concedes that "as a general rule a conviction may rest upon the testimony of a single witness, though it be contradicted by others or appear uncertain or inconsistent," he contends that this "rule does not apply if testimony of such single witness is not of a cogent and conclusive nature, and 'if it is so indefinite, contradictory or unreliable that it would be unsafe to rest a conviction thereon.'" See Letner v. State, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974) (quoting 23 C.J.S. Criminal Law § 903). See also State v. Nix, No. 136 (Tenn. Crim. App. at Knoxville, Sept. 6, 1991), perm. to appeal denied, (Tenn. Dec. 30, 1991).

Although the appellant's recital of the law is accurate, his reliance upon Letner is misplaced. In Letner, the supreme court was faced with the testimony of an eyewitness whose testimony was not wholly consistent with the testimony of several others who were at the scene. The issue of the defendant's guilt rested on the contradictory testimony of the eyewitnesses. By contrast, the case before us only involves the contradictions between Stacy Patzer's trial testimony and her statements made immediately following the shooting incident. Stacy Patzer explained that her statements that the victim committed suicide made immediately following the incident were the result of her intoxicated and hysterical state and were influenced by the appellant's suggestion that the victim had shot himself. Regardless of this explanation, Ms. Patzer's trial testimony was corroborated by evidence that (1) the weapon involved belonged to the appellant, despite his denial of ownership; (2) the presence of human blood on the appellant's t-shirt, despite his explanation that the stains were spaghetti sauce; (3) the appellant's denial that he was not in the room when the shooting

6

occurred; (4) the testimony of three witnesses who described the appellant's anger with the victim; (5) the appellant's attempt to prohibit Stacy Patzer from contacting "911" after the incident. These circumstances of independent and corroborating proof distinguish the present case from the facts before the court in Letner. Thus, this court cannot reweigh the evidence as urged by the appellant. See, e.g., State v. Barnett, No. 02C01-9103-CR-00035 (Tenn. Crim. App. at Jackson, Mar. 11, 1992), perm. to appeal denied, (Tenn. May 26, 1992); State v. Bowen, No. 03C01-9108-CR-241 (Tenn. Crim. App. at Knoxville, Jan. 30, 1992); State v. Gaskell, No. 285 (Tenn. Crim. App. at Knoxville, June 26, 1991); State v. Johnson, No. 1056 (Tenn. Crim. App. at Knoxville, Jul. 8, 1988), perm .to appeal denied, (Tenn. Oct. 17, 1988).

The determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are entrusted exclusively to the trier of fact, in this case the jury. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978). On appeal, it is the duty of this court to affirm the conviction if the evidence was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt, Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence for the jury to find the appellant guilty of second degree murder. Tenn. R. App. P. 13(e). This issue is without merit.

## II. Instructions to the Jury

In his final assignments of error, considered collectively in this appeal, the appellant contends that the trial court erred by instructing the jury via a *sua sponte* limiting instruction and again with the general instruction at the close of trial that prior inconsistent statements may only be considered for purposes of determining the witness's credibility and may not be considered as substantive evidence.

On direct examination of Stacy Patzer, the State elicited from this witness that, while being interviewed at the police station the night of the shooting, she stated that Howard Harp had committed suicide. Stacy Patzer explained that, at that time, "it was what [she] had believed" was the truth. Later in her testimony, Stacy stated that, upon a second interview with authorities when she was sober, she informed police officers that the appellant shot Howard Harp.

On cross-examination, defense counsel also questioned Ms. Patzer about her initial statement to law enforcement authorities immediately after the shooting stating that Howard Harp had committed suicide. Ms. Patzer agreed that this statement was made by her voluntarily and she verified both the contents and her signature.[1] Defense counsel then moved to admit the statement into evidence. The State entered no objection. The trial court asked whether the statement was "being introduced to show the inconsistencies." Defense counsel responded affirmatively and did not offer any other basis for the statement's admission. The trial court admitted the statement, but provided, *sua sponte*, an instruction limiting the jury's consideration of the statement only for the purpose of determining the witness's credibility and not as substantive evidence. Defense counsel did not object to the court's limitation of the evidence.

The appellant now contends that the trial court's *sua sponte* instruction was erroneous and, absent objection from either party, amounted to an impermissible comment upon the evidence. Specifically, the appellant contends that absent any objection as to the hearsay nature of the statement, the jury was entitled to consider the statement as substantive evidence. See State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977). Additionally, he surmises that the trial court's instruction may have influenced the jury to believe that Ms. Patzer's in-court testimony is more credible than her numerous out-of-court statements.

---

[1] In this statement, Ms. Patzer related that Howard Harp had placed the gun against his temple, laughed, and then shot himself.

8

Initially, we note that the appellant waived his right to raise this issue on appeal because he failed to object to the instruction at trial. See Tenn. R. App. P. 36(a). Notwithstanding waiver, we find the appellant's arguments without merit. Tennessee law has traditionally permitted a witness's prior inconsistent statement to be used to impeach the witness. NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 613.4 (1995 and 1998 Supp.); see also Tenn. R. Evid. 613. However, prior inconsistent statements of a witness are only to be considered on the issue of credibility and are not generally admissible as substantive evidence as such statements constitute hearsay. See State v. Reece, 637 S.W.2d 858, 861 (Tenn.1982). A prior inconsistent statement introduced for purposes of impeachment may be considered by the jury as substantive evidence only if the statement is admissible under a hearsay exception or other rule of evidence. Id.

In the present case, the appellant does not dispute that Ms. Patzer's written statement constitutes hearsay. Furthermore, at trial, the appellant did not offer a hearsay exception for admissibility of the statement and conceded that the only purpose of introducing the statement was to attack Ms. Patzer's credibility. Accordingly, the statement could only be received as impeaching evidence. Our supreme court has directed that, when prior statements are only to be considered on the issue of credibility, "the trial judge should give a contemporaneous instruction to this effect when the impeaching statements are offered." See Reece, 637 S.W.2d at 861; see also Comments, T.P.I.--Crim. 42.06 (4th ed. 1995). Accordingly, the trial court properly, *sua sponte,* instructed the jury as to the applicable law. See, e.g., State v. Combs, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996), perm. to appeal denied, (Tenn. 1997) (*sua sponte* action limiting irrelevant evidence upheld).

Notwithstanding the trial court's proper instruction and the failure of either party to raise such issue on appeal, we note that the trial court should not have admitted the statement into evidence as the written statement was extrinsic evidence of the prior

9

inconsistent statement. If a witness admits making the prior inconsistent statement, the written statement is not admissible since it would be cumulative evidence and waste time. See Tenn. R. Evid. 613(b); see also State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998); NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 613.4. Although this admission was error, a violation of an evidentiary rule does not mandate reversal if the error "was more probably than not harmless." See Martin, 964 S.W.2d at 568 (citing United States v. Barrett, 703 F.2d 1076, 1081-82 (9th Cir. 1983). See also Wilson v. State, 724 S.W.2d 766, 769 (Tenn. Crim. App. 1986) (parenthetical omitted)). We cannot conclude that the admission of extrinsic evidence of the witness's prior inconsistent statement, which she admitted on both direct and cross-examination, "affirmatively appear[s] to have affected the result of the trial on its merits." See Tenn. R. Crim. P. 52(a).

Additionally, the appellant, in his final argument, asserts that the trial court, in its final charge to the jury, "improperly limited the jury's consideration of a witness's out of court statement" for purposes of determining the witness's credibility. The trial court permitted the State to introduce prior inconsistent statements of Ms. Patzer as admissible hearsay under the excited utterance exception, e.g., Ms. Patzer's statements recorded on the "911 tape." The appellant, thus, argues that the instruction provided by the trial court had a limiting impact upon the jury's consideration of admissible prior inconsistent statements and other related hearsay exception evidence.

Again, the State responds, in part, that the appellant has waived this issue by failing to enter a contemporaneous objection at trial. Pursuant to Rule 30, Tenn. R. Crim. P., a defendant is permitted to challenge the content of an instruction or the denial of a requested instruction as error in support of a motion for new trial despite the failure to object at trial. Our supreme court has interpreted this rule as allowing claims of the denial of a requested instruction or of a positive error in the jury instructions but not of errors of omissions when no objection or special request was made at trial. State

10

v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996); Reece, 637 S.W.2d at 861. See also State v. Brewer, 932 S.W.2d 1, 16 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1996) (holding that as a general rule, "in the absence of an objection or a special request, a defendant may not later raise an issue regarding an omission in the court's charge").   In the present case, the appellant contests the trial court's omission of language permitting the jury to consider "excited utterance" statements as substantive evidence.  Thus, the issue is waived.

Notwithstanding waiver, the instruction provided by the trial court in the present case is almost verbatim T.P.I. Crim. 42.06 (4th ed. 1995).  The Comments to this instruction provide that "[t]his instruction must be given in each case, unless T.P. I. -- Crim. 42.04 (b) has been charged."  Instruction 42.04 was not provided.  Additionally, the fact that an instruction could have been more detailed does not render the instruction as given improper, and absent a special request for an additional charge, a trial court will not be held in error.  State v. Haynes, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986).  This issue is without merit.

**Conclusion**

After a review of the record and arguments presented by both the State and the appellant on appeal, we find no error of law requiring reversal.  The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JAMES CURWOOD WITT, JR., Judge

_____
JOHN EVERETT WILLIAMS, Judge

11