IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JULY 1999 SESSION

FILED

August 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9809-CR-00299 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable James C. Beasley, Judge |
| ERIC L. CARTER, | ) | |
| | ) | (Second degree murder) |
| Appellant. | ) | |

For the Appellant:

A. C. Wharton
Public Defender
    and
Michael Johnson
Assistant Public Defender
Criminal Justice Complex
201 Poplar Avenue
Memphis, TN 38103
(AT TRIAL)

Tony N. Brayton
Assistant Public Defender
 for Shelby County
201 Poplar Avenue
Memphis, TN 38103
(ON APPEAL)

For the Appellee:

Paul G. Summers
Attorney General of Tennessee
    and
R. Stephen Jobe
Assistant Attorney General of Tennessee
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
    and
Thomas D. Henderson and
Paula Wulff
Assistant District Attorneys General
Criminal Justice Complex, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Eric L. Carter, appeals as of right from his conviction by a jury in the Shelby County Criminal Court for second degree murder, a Class A felony. He was sentenced to twenty-four years confinement in the Department of Correction. On appeal, the defendant contends that the evidence is insufficient to support the conviction and that the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. We affirm the judgment of conviction.

At trial, Veronica Edwards, the victim's daughter, testified that she picked up the victim in his truck after work on December 13, 1996. She said they went Christmas shopping, and later that evening, they bought crack cocaine from the defendant. She said she gave the victim directions to the defendant's apartment. She said she and the victim went to the defendant's apartment door and told him that they wanted to buy cocaine. She said the victim gave the defendant money, and the defendant gave them the drugs. She said the victim got the money from his left front pants pocket. She said the victim had a lot of money because it was payday and he had received a bonus check.

Ms. Edwards testified that she and the victim went to her house and smoked the crack and drank whiskey and wine coolers. She said the victim then drove them to the defendant's apartment to buy more drugs. She stated that she went to the defendant's apartment and bought the drugs while the victim remained in the truck. She testified that she and the defendant then walked out to the truck together, and she entered the passenger's side. She stated that the defendant, who was on the driver's side of the truck, displayed a gun and demanded money from the victim. She said the victim stated that he did not have any money, and he started to leave the truck. She

2

said that the victim had his hands up and that as he was getting out, the defendant shot the gun. She said the bullet went through the driver's side window. She said the victim did not have a weapon. She said the victim got out of the truck and wrestled with the defendant. She said the defendant got money out of the victim's pocket, then he shot the victim. She said she had not seen the gun as she and the defendant were walking toward the truck. She said that after the shooting, the defendant ran away, and she ran to get help. She said she knew the defendant, but she denied owing him money.

Ms. Edwards admitted that she lied to the police when they arrived. She said she also lied when she gave another statement at the police station. She said she was scared and wanted to hide the fact that they were buying drugs. She admitted that in her first statement to the police, she said that the defendant approached her at a convenience store, displayed a weapon, got in the truck, and drove to his apartment. She admitted that in the second statement, she said that she and the defendant conspired to rob the victim. She said that neither statement was true. She said she implicated herself in the shooting because that is what she thought the police wanted to hear. She said she has always maintained that the defendant shot the victim. She admitted that both she and the victim were high at the time of the shooting. She said that after the first gunshot, the victim and defendant wrestled as the victim tried to get the gun away from the defendant. She iterated that they stopped wrestling, the defendant took the victim's money, then the defendant shot the victim. She then said that the defendant began counting the victim's money after the first shot, then the defendant shot the victim. She said that she and the victim smoked crack together many times but that she quit smoking crack "cold turkey" one year before she testified.

Beulah Marr testified that she lives in the same apartment complex as the defendant and that she has a view of the parking lot. She said that she came home late on December 13 and that it was dark outside. She said she saw a man sitting by

3

himself in a truck in the parking lot. She said she went to her apartment and heard two gunshots about three to five minutes later. She said a lady then knocked on her door, said that her father had been shot, and asked Ms. Marr to call the police. Ms. Marr stated that she called 9-1-1. She said the woman was nervous and upset. Ms. Marr stated that she did not see the defendant that evening.

Officer John Simpson of the Memphis Police Department testified that he responded to a shooting call at the defendant's apartment complex. He said he found the victim lying face down behind a truck, and the victim had no pulse. He said that Veronica Edwards was hysterical and that he secured her in the back of a patrol car.

Sergeant Dana Stine testified that bullets penetrated the victim's truck. He said the victim was lying face down at the rear of the truck. He said the victim's pockets were turned inside out as if someone had gone through them. He said he inventoried the victim's property and found eyeglasses and a four-inch pocket knife with the blade closed. He said that there were street lights in the parking lot but that it was dark. Sergeant Stine testified that he received permission from the defendant's mother to search the apartment that she rented for her sons. He said he found a fully-loaded .32 caliber revolver in the apartment. He said he took a statement from Veronica Edwards, and she did not seem as upset as he would expect from someone whose father had been killed.

Officer George Coleman testified that he investigated the scene. He testified that a bullet was fired from outside the truck. He said the bullet went through the driver's side, came out the driver's seat, went across the top of the passenger's seat and struck the window behind the passenger, knocking out the glass. He said that the area immediately adjacent to the parking lot was very dark and was not lit. He said that he found a whiskey bottle and wine coolers in the console of the truck.

4

Sergeant James Fitzpatrick testified that he investigated the truck after it was placed in police storage. He said that he removed the bullet from the passenger's side rear window. He said that another bullet was recovered from the victim's body. He said he spoke with the defendant's mother and stepfather, Robert Lee, and took a statement from Mr. Lee. He said that both were congenial and cooperative. He said that he was present when Veronica Edwards gave her second statement, which was inconsistent with the first statement. He said that Ms. Edwards was arrested but never charged. He said that to his knowledge, a murder weapon was never found.

Robert Lee, the defendant's stepfather, testified that he did not speak with the defendant on December 13 or 14 after the shooting. He admitted giving a statement to police in which he said he did talk to the defendant. He admitted that in the statement, he said that he spoke with the defendant at about 7:00 a.m. on December 14. He admitted stating that the defendant told him that the victim owed him money and that the victim refused to pay. Mr. Lee said he told the police that the defendant told him that the victim looked like he was reaching into his pocket for something and that the defendant shot the victim and ran off. In the statement, Mr. Lee said the defendant told him that he panicked and threw the gun in the river. Mr. Lee testified that he remembered reading the statement, checking it for accuracy and signing it. He said he fabricated the story because he thought it would help the defendant. He said he was not lying at trial because he was under oath. He admitted that he did not volunteer to correct his false statement at the preliminary hearing.

Mr. Lee testified that he received social security benefits because of a mental disability. He said that at the time of the shooting, he took about fifteen pills for pain each day. He said that the police awakened him when they first came to talk to him. He said the police never asked if he was on medication.

5

Officer Donald Crowe testified that he was dispatched to the Regency Apartments to pick up a murder suspect on January 27, 1997. He said that he could see someone inside the apartment watching television. He said he and another officer knocked on the front and side doors, but no one answered. He said he looked through the blinds and saw feet moving. He said he continued knocking on the window with a nightstick, and the window broke. He said the person who was watching television opened the door. He said the man matched the description of the defendant, but when he asked the man his name, he did not give the defendant's name. He said he asked the man if anyone else was in the house, and the man said no one else was there. He said he found the defendant lying on a bed in a bedroom, fully clothed.

Dr. Jerry Francisco, medical examiner for Shelby County, testified that he performed the autopsy of the victim. He said that the victim was six feet tall and weighed one hundred ninety-two pounds. He said the victim had a scrape on his knee, a scrape and tear on his chin, and a gunshot wound to his right chest. He said the victim died from the gunshot wound which caused severe internal bleeding. He said the bullet entered the right chest and lodged in the left chest. He said that the victim's blood alcohol content was .12 percent, which would cause a person to lose the ability to control fine motor movements and to lose the capacity to exhibit proper judgment. He said the victim's blood also tested positive for cocaine. He testified that he could not determine what type of weapon was used. He said that inside the body, the bullet followed a downward trajectory.

Harold Cade testified that he lived in the defendant's apartment building. He said that he was watching television when the shooting occurred. He said that after the shots, he went to the window and saw a man lying in the parking lot and a woman walking toward the man. He said he went outside a few seconds later, and the woman

6

was still kneeling by the man. He said the woman then started going door to door to get someone to call the police.

Mr. Cade testified that he saw a man walking away from the scene. He said the man was about six feet, one inch tall and weighed about two hundred and ten pounds. He said that when the man reached the end of the apartments, the man began to run. He said he did not see the man's face, but he knew that it was not the defendant. He said he knows the defendant, and the man he saw that night was shorter and smaller than the defendant. He said that when he first saw the man, the man was ten to twelve feet from the truck and was walking toward the courtyard. He said that the courtyard was dark and that he was looking out of a closed window.

## I. SUFFICIENCY OF THE EVIDENCE

First, the defendant contends that the evidence is insufficient to support his conviction. He argues that the only evidence linking him to the shooting is the testimony of Veronica Edwards, and Ms. Edwards' testimony is not credible because she is a crack addict who gave contradictory statements to the police. The state contends that the evidence is sufficient. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

7

Second degree murder is defined as the knowing killing of another.  Tenn.

Code Ann. § 39-13-210(a)(1).  Tenn. Code Ann. § 39-13-302(b) provides as follows:

> "Knowing" refers to a person who acts knowingly with respect
> to the conduct or to circumstances surrounding the conduct
> when the person is aware of the nature of the conduct or that
> the circumstances exist.  A person acts knowingly with respect
> to a result of the person's conduct when the person is aware
> that the conduct is reasonably certain to cause the result.

The evidence establishes that the defendant approached the victim,

displayed a gun, and demanded the victim's money.  As the victim left the truck, the

defendant fired a gun into the truck.  When the victim tried to get the gun from the

defendant, the defendant took the victim's money and then shot him.  Although the

defendant contends that the testimony of Veronica Edwards is not credible, questions

concerning the credibility of the witnesses and the weight and value to be given to the

evidence are resolved by the trier of fact, not this court.  State v. Pappas, 754 S.W.2d

620, 623 (Tenn. Crim. App. 1987).  We hold that the evidence is sufficient to support

the conviction.

## II.  INSTRUCTION ON VOLUNTARY MANSLAUGHTER

Next, the defendant contends that the trial court erred by not instructing

the jury on the lesser included offense of voluntary manslaughter.  He argues that the

statement made to the police by Robert Lee provides evidence that the defendant may

have shot the victim as the result of provocation.  The defendant acknowledges that the

statement was not offered for its truth but rather to impeach Mr. Lee's direct

examination testimony.  The state contends that the trial court did not err by not

instructing the jury on voluntary manslaughter because no substantive evidence exists

to support the instruction.

Pursuant to Tenn. Code Ann. § 40-18-110(a), a trial court is required "to

charge the jury as to all of the law of each offense included in the indictment, without

8

any request on the part of the defendant to do so." When the evidence, introduced by either the state or the defendant, is susceptible of inferring guilt of a lesser offense, the trial court has a mandatory duty to charge such lesser offense. See Tenn. Code Ann. § 40-18-110(a); Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975). An instruction is not required if there is no evidence in the record to support a conviction for the lesser offense. State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996). However, "the trial court must consider the evidence in the light most favorable to the existence of the lesser included offense and if the evidence so considered permits an inference of guilt of a lesser offense, the trial court must give instructions as to that lesser offense." State v. Brooks, 909 S.W.2d 854, 861 (Tenn. Crim. App. 1996).

In the present case, Mr. Lee stated at trial that he did not speak with the defendant after the shooting. The state sought to impeach his testimony through the use of a prior statement that Mr. Lee made to the police in which he stated that the defendant indicated to Mr. Lee that he shot the victim after provocation. The defendant contends that this prior statement raises an issue regarding self-defense or provocation such that an instruction on voluntary manslaughter was warranted.

Rule 613, Tenn. R. Evid., provides for the impeachment of a witness by a prior inconsistent statement. Our supreme court has held that the "cases clearly establish that prior inconsistent statements offered to impeach a witness are to be considered only on the issue of credibility, and not as substantive evidence of the truth of the matter asserted in such statements." State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982) (citations omitted); State v. Martin, 964 S.W.2d 564, 566-67 (Tenn. 1998). In the present case, the trial court instructed the jury that Mr. Lee's statement was not to be considered for its truth but to impeach Mr. Lee's credibility as a witness.

We believe that the trial court did not err by not instructing the jury on voluntary manslaughter. The only evidence that might tend to support such an instruction is contained in Mr. Lee's statement to the police. However, the substance of that statement was not admitted into evidence for its truth; rather it was only admitted to impeach Mr. Lee's trial testimony. It would be illogical to prevent the jury from considering the statement as substantive evidence in its evaluation of the case but then to allow the trial court to consider the statement as substantive evidence for purposes of determining whether an issue was raised regarding voluntary manslaughter. Even if the trial court had instructed the jury on voluntary manslaughter, the jury could not have considered Mr. Lee's statement as substantive evidence in evaluating the case. The statement was admitted for impeachment evidence only.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
James Curwood Witt, Jr., Judge


_____
John Everett Williams, Judge

10