IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**STATE OF TENNESSEE v. CARL MCKISSACK**

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-618     Roy B. Morgan, Jr., Judge**

**No. W1999-01136-CCA-R3-CD - Decided May 24, 2000**

The Defendant, Carl McKissack, was tried and convicted of assault by a Madison County jury. In this appeal as of right, the Defendant argues that the trial court erred by permitting a prior inconsistent statement to be used as substantive evidence and that the evidence was insufficient to support the conviction. We hold that the trial court erred by permitting a prior inconsistent statement to be used as substantive evidence and that the evidence was otherwise insufficient to support the Defendant's conviction. Accordingly, we reverse the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Reversed**

WELLES, J., delivered the opinion of the court, in which HAYES, J., and GLENN, J., joined.

Steve McEwen, Mountain City, Tennessee, for the appellant, Carl McKissack.

Paul G. Summers, Attorney General and Reporter, Tara B. Hinkle, Assistant Attorney General, Jerry Woodall, District Attorney General, and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In this appeal as of right, the Defendant, Carl McKissack, challenges his conviction of assault, pursuant to a jury verdict. He argues that the trial court erred by permitting a prior inconsistent statement of a witness to be considered as substantive evidence and that the evidence was insufficient to support the conviction. We agree; accordingly, we reverse the Defendant's assault conviction and remand for further proceedings.

Only two witnesses testified at trial: the alleged victim and a police officer. The alleged victim, Doctor William McKissack, testified that the Defendant is his youngest son and that the Defendant lives at home with him and his wife, the Defendant's mother. He said that the Defendant was living with him on May 17, 1998, the date of the alleged assault. He explained that he and the Defendant became involved in an argument on the morning of May 17, 1998, because the Defendant

wanted to use the car and he would not let the Defendant have it. He said the Defendant "started using street language and foul language," which he felt was inappropriate language to be used around his wife. Dr. McKissack testified that he dialed 911 because of the Defendant's foul language, but he hung up the telephone before saying anything. He said he called 911 "to have them come out to stop [the Defendant's] mouth," but then he changed his mind and ended the call. The 911 operator called him back, and he told the operator that he did not need the police to respond. The police did respond, however, arriving three or four minutes later. After speaking with both parties, they arrested the Defendant for assault.

Dr. McKissack testified that he was not afraid of the Defendant and that the Defendant did not touch or harm him in any way. He said that the Defendant did not threaten to harm him. He denied telling the police that the Defendant threatened him with a remote control, but he did say that the Defendant often has the remote control in his hand. He also denied telling the police that he was afraid of the Defendant. He said that the report prepared by the police was wrong and that he told the District Attorney General it was wrong, but the police did not correct the report.

Officer Melvin Allen with the Jackson Police Department testified that he responded to the McKissack home in Jackson around 10:05 a.m. on May 17, 1998 in response to a 911 call. He, along with two other officers, arrived at the home and discovered the Defendant and his father involved in a verbal altercation. He said that the officers separated the individuals to talk to them. Officer Allen spoke with Dr. McKissack in Dr. McKissack's bedroom while the other officers spoke with the Defendant in another room. Officer Allen testified that Dr. McKissack stated that he had been in bed asleep that morning when the Defendant came into the bedroom, wanting him to get up and take the Defendant to the store to get some cigarettes. Officer Allen reported that Dr. McKissack stated that when he refused to take the Defendant to the store, the Defendant became angry and started cursing and threatening him. Officer Allen also stated that Dr. McKissack said the Defendant had a remote control in his hand and that the Defendant threatened "to bust it over his head." He stated that Dr. McKissack told him at this point that he was afraid of the Defendant and that he thought the Defendant would "bust" the remote over his head. Officer Allen testified that there was a remote control in the house and that he thought Dr. McKissack picked it up from the bedroom floor and showed it to him. He said that Dr. McKissack's statements were in response to questions asked by police; they were not spontaneous statements made when the police entered the residence.

After hearing this proof, the jury found the Defendant guilty of assault. On appeal, the Defendant challenges the admission as substantive evidence of Dr. McKissack's prior inconsistent statements to Officer Allen, as well as the sufficiency of the evidence. Because the two issues are interrelated, we will consider them together.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient.  See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)).  The court may not "re-weigh or re-evaluate the evidence" in the record below.  Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836).  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  See Tuggle, 639 S.W.2d at 914.

The Defendant was charged with the offense of assault, committed by either intentionally or knowingly causing bodily injury to Dr. McKissack or intentionally or knowingly causing Dr. McKissack to reasonably fear imminent bodily injury.  See Tenn. Code Ann. § 39-13-101(a)(1)-(2). Because there was no testimony regarding actual bodily injury to Dr. McKissack, the State was required to be prove that the Defendant intentionally or knowingly caused Dr. McKissack to reasonably fear imminent bodily injury.  See id.

The testimony of the victim in this case, Dr. McKissack, was obviously insufficient to establish the elements of the offense.  According to Dr. McKissack, he was never afraid of the Defendant, and he did not believe that the Defendant would hurt him.  He denied that the Defendant threatened to harm him.  He said that he only called 911 because the Defendant was using foul language, and he subsequently told the 911 operator that the police were not needed.

Notwithstanding, Officer Allen testified without objection that Dr. McKissack stated that the Defendant threatened to "bust" a remote control over his head and that he was afraid of the Defendant. If allowed to consider this testimony as proof of the matter asserted in the testimony, a rational jury could have found beyond a reasonable doubt that Dr. McKissack was indeed in reasonable fear of imminent bodily injury.  Thus, if this testimony was properly considered as substantive evidence, the evidence would be sufficient to support the conviction.  As previously stated, it is the jury's job to weigh the evidence and judge the credibility of the witnesses.  We may not re-weigh or re-evaluate the evidence on appeal.  See Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836).

Because the statements made by Dr. McKissack to Officer Allen were made out of court, if they were used in court to prove the truth of the matter asserted therein, the statements would be hearsay.  See Tenn. R. Evid. 801(c).  Hearsay statements are not admissible in court unless they fall into one of the established hearsay exceptions.  See Tenn. R. Evid. 802.  Although the hearsay issue

was not addressed at trial, the State argued at the hearing on the motion for a new trial and on appeal that the statements were excited utterances, which would make them admissible because excited utterances are excepted from the hearsay rule. See Tenn. R. Evid. 803(2). At the hearing on the motion for a new trial, the trial court did not address whether the statements were excited utterances; instead, the court simply stated that the jury did its job and that the evidence was sufficient to support the jury's verdict. After reviewing the record, we conclude that the statements were not admissible as excited utterances; thus, they were inadmissible to prove the truth of the matters asserted in the statements.

Tennessee Rule of Evidence 803(2) provides the following exception to the hearsay rule: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale for this exception is twofold:

> First, since this exception applies to statements where it is likely there was a lack of reflection -- and potential fabrication -- by a declarant who spontaneously exclaims a statement in response to an exciting event, there is little likelihood, in theory at least, of insincerity. Rule 803(2) requires that the declarant must labor under the stress of excitement while speaking. This hearsay exception is not available once the declarant is no longer under stress. Second, ordinarily the statement is made while the memory of the event is still fresh in the declarant's mind. This means that the out-of-court statement about an event may be more accurate than a much later in-court description of it.

Neil P. Cohen, et al., Tennessee Law of Evidence § 803(2).1, at 532 (3d ed. 1995); see also State v. Gordon, 952 S.W.2d 817, 819-20 (Tenn. 1997).

As evident from the language of this exception, three requirements must be met before a statement will qualify as an excited utterance: first, there must be a startling event or condition; second, the statement must relate to the startling event or condition; and third, the declarant must still be under the stress of excitement from the event or condition when the statement is made. See Tenn. R. Evid. 803(2); Gordon, 952 S.W.2d at 820; State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). We agree with the State that the first two requirements of this exception are met in this case. An assault would qualify as a startling event, see Gordon, 952 S.W.2d at 820, and Dr. McKissack's statements about the alleged assault would be related to the startling event. However, we do not believe that the third requirement has been established. All the State established with respect to the stress of excitement of the event is that Dr. McKissack made the statements in response to questions by police shortly after the police arrived at the residence and that Dr. McKissack and the Defendant were arguing when the police arrived. While the time interval is a consideration in determining whether a statement was made under stress of excitement, it is only one consideration. See id. We are unable to infer stress based only on the time interval, which is what the State is asking us to do in this case. The testimony reveals nothing about Dr. McKissack's demeanor while making the statements; it reveals only that the statements were made in response to questions asked by Officer Allen and that the statements were made after Dr. McKissack had been separated from the Defendant and while the two parties were in separate rooms. While statements made in response to questions may be excited

-4-

utterances, there must be evidence that they were made while under stress of excitement of the startling event.  See id. at 821.  We simply do not find that evidence in this record.

Notwithstanding, the Defendant did not object to the admission of this evidence during trial. Generally, "[w]hen no objection to [hearsay] testimony is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible."  State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981); see also State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977). However, our courts have recognized a limited exception when the testimony concerns a prior inconsistent statement of a witness.  See State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982); State v. Emit Keith Cody, No. E1999-00068-CCA-R3CD, 2000 WL 190227, at *6 (Tenn. Crim. App., Knoxville, Feb. 16, 2000).

Under our rules of evidence, a statement made by a witness prior to trial which is inconsistent with a statement made by the witness during trial, is admissible to impeach the witness's credibility. See Tenn. R. Evid. 607, 613.  Such statements are not considered hearsay because they are not used to prove the truth of the statements.  See Tenn. R. Evid. 801.  In State v. Reece, our supreme court stated,

> Our cases clearly establish that prior inconsistent statements offered to impeach a witness are to be considered only on the issue of credibility, and not as substantive evidence of the truth of the matter asserted in such statements.  McFarlin v. State, 214 Tenn. 613, 381 S.W.2d 922 (1964); King v. State, 187 Tenn. 431, 215 S.W.2d 813 (1948).  Accordingly, the trial judge should give a contemporaneous instruction to this effect when the impeaching statements are offered.  Martin v. State, 584 S.W.2d 830, 833 (Tenn. Ct. App. 1979).

637 S.W.2d at 861.

The defendant in Reece was charged with armed robbery, and he presented an alibi defense. See id. at 859-60.  In rebuttal, the State called the defendant's two daughters, who both testified that their father had been at home on the morning of the robberies, thereby supporting his alibi defense. See id. at 860.  The State then called a police officer who testified that the daughters had previously stated that their father had been gone the night before the robbery, that he had never come home, and that their mother and uncle had received a phone call the following morning and left the house to go meet their father.  See id.  No limiting instruction on the use of these contradictory statements was given.  See id.  The supreme court found that "the prior contradictory statements of appellant's daughters struck at the very heart of his alibi defense."  Id. at 861. The court was persuaded that the jury did consider the impeaching testimony for the truth of the statements, and it stated, "we cannot say beyond a reasonable doubt that the failure to instruct the jury on the limited purpose for which the children's prior inconsistent statements could be considered did not result in substantial prejudice to appellant which affected the results of the trial."  Id.

Like the Defendant in this case, the defendant in Reece did not properly object to the hearsay testimony or request a special limiting instruction.  The supreme court reversed this Court's holding in that case that the failure to give a limiting instruction in the absence of a special request was

harmless error, stating, "if the State's case is weak and the prior inconsistent statements are extremely damaging, the failure to give the limiting instruction may amount to fundamental error constituting grounds for reversal, even in the absence of a special request." Id. Our supreme court then expressly limited its holding "to those exceptional cases in which the impeaching testimony is extremely damaging, the need for the limiting instruction is apparent, and the failure to give it results in substantial prejudice to the rights of the accused." Id.

We conclude that this clearly is one of those "exceptional cases." Officer Allen's testimony regarding Dr. McKissack's statements about the crime was the only evidence of the Defendant's guilt. Dr. McKissack adamantly denied at trial that he was afraid of the Defendant or that the Defendant threatened to harm him. Without considering the hearsay testimony, the only testimony at trial was that the Defendant did not threaten or frighten Dr. McKissack in any way. Accordingly, the failure of the trial court to give a limiting instruction regarding Dr. McKissack's prior statements even in the absence of an objection and in the absence of a special request was fundamental error. The Defendant's conviction is reversed and this case is remanded to the trial court for such further proceedings as may be warranted.