# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 23, 2002 Session

## STATE OF TENNESSEE v. GREGORY DUNNORM

### Appeal from the Criminal Court for Anderson County
### No. 99CR0258     James B. Scott, Jr., Judge

---

### No. E2001-00566-CCA-R3-CD
### June 12, 2002

---

The defendant, Gregory Dunnorm, was convicted of Class D felony evading arrest, the simple assault of LaDeana Ellis, vandalism, and second offense driving on a suspended license. See Tenn. Code Ann. §§ 39-16-603, 39-13-301, 39-14-408, 55-50-504. He had been charged with the aggravated assault of LaDeana Ellis and was acquitted on charges of simple assault of Sonda Ellis and aggravated assault of Officer Karen Wehenkel. While granting supervised probation, the trial court sentenced the defendant to concurrent terms of two years for evading arrest and 11 months, 29 days for each of the misdemeanor convictions. In this appeal of right, the defendant asserts (1) that the evidence was insufficient to support the convictions for evading arrest, assault, and vandalism; (2) that the trial court erred by permitting the state to cross-examine the defendant regarding his affidavit of income; (3) that the trial court erred by failing to instruct the jury regarding the lesser included offenses of Class D felony evading arrest; and (4) that the trial court erred by declining to instruct the jury on the defense of effective consent. Because the evidence was insufficient to support the defendant's conviction for Class D felony evading arrest and because the trial court erred by failing to instruct on the lesser included offense of Class E felony evading arrest, the conviction is reversed and the cause remanded. Otherwise, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in Part and Reversed and Remanded in Part

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

J. Thomas Marshall, Jr., District Public Defender, for the appellant, Gregory Dunnorm.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the evening of June 12, 1999, Sonda Ellis attended a dance at the Elks Lodge in Oak Ridge. As Ms. Ellis walked to her car at approximately 1:00 a.m., accompanied by a friend, Cassandra Johnson, she observed the defendant enter the parking lot driving a brown Cadillac. When she heard the defendant say "bitch, " Ms. Ellis turned in his direction. She claimed that the defendant struck her in the face, knocking her to the ground. When Ms. Johnson attempted to drag Ms. Ellis to the door of the lodge, the defendant struck Ms. Johnson in the upper body. At that point, Ms. Ellis's cousin, LaDeana Ellis, came out of the lodge and attempted to question the defendant as he returned to his car. The defendant got into his car and accelerated quickly in reverse, first bumping LaDeana Ellis and then knocking her to the ground with the still-open car door. The defendant then drove out of the parking lot, striking a police car as he did so. As a result of the assault, Sonda Ellis sustained facial bruises and bruises and scratches on her lower body. She denied having bumped into the defendant or having spilled a drink on him, but acknowledged throwing her shoe in his direction as he left.

LaDeana Ellis, who knew the defendant, testified that she was inside the Elks Club when the defendant assaulted her cousin, Sonda Ellis. When she learned that the defendant had struck her and inquired why, the defendant initially gave her a blank look before saying that he "didn't have to explain." She testified that she cursed and pushed the defendant and attempted to calm her cousin, Sonda, who was "trying to hit him." Ms. Ellis, who was knocked unconscious, stated that her next memory was of waking up in the hospital. She was sore and her feet were cut.

Lynette Carpenter testified that when she arrived at the scene, LaDeana Ellis was attempting to calm her cousin Sonda, who stated that the defendant had struck her. Ms. Carpenter confirmed that the defendant entered his vehicle and drove it in reverse, striking LaDeana Ellis with the car door and dragging her along the ground. She denied having seen anyone throw things at the defendant.

Karen Wehenkel, an officer with the Oak Ridge Police Department, was on patrol when she heard a woman screaming in the Elks Lodge parking lot sometime between 1:30 and 2:00 a.m. She observed a woman "doubled over, holding her stomach, on her back" in the parking lot and a Cadillac traveling in reverse at a high rate of speed. The front driver's side door of the Cadillac was open. When the officer positioned her cruiser so as to partially block the exit, the Cadillac driver "gunned the engine" and struck the right rear quarter panel of her vehicle. When the defendant moved his vehicle, she again blocked his path. When Officer Wehenkel stepped out of her vehicle, the defendant backed towards her, then drove around her cruiser and out of the parking lot. The officer followed the vehicle, forced it off the roadway, and arrested the defendant. She described the defendant as hysterical and recalled that he repeatedly said, "I didn't run anybody over, I'm not going to run anymore." Officer Wehenkel placed the defendant in the back of her cruiser. Later, when she inspected her vehicle, she discovered that the armrest and plastic molding on the interior of the rear driver's side door had been cracked and broken away. The cruiser's rear seat vinyl had also been

torn. Officer Wehenkel testified that no one other than the defendant had been transported in the back seat during her shift and that it was undamaged prior to her shift.

Shyista LaToya Bates was in her car leaving the Elks Club when the defendant arrived. When she observed Sonda Ellis fall to the ground, she got out of her car. She stated that when LaDeana Ellis asked the defendant what he was doing, he replied that he did not have to explain. Ms. Bates, who acknowledged that LaDeana Ellis had pushed the defendant as he walked to his car, corroborated the other testimony that the defendant struck Ms. Ellis with his open car door and dragged her on the ground.

Richard Hunter, a defense witness, testified that he walked out of the Elks Club and observed two women "in [the defendant's] face, yelling and screaming." He stated that when he directed the defendant to go home, someone reached over him to get at the defendant. Hunter testified that as he "coerced" the defendant to his car, a shoe and an alcoholic beverage were thrown in their direction. He recalled that two women "jumped over" him and "jumped on" and punched the defendant. Hunter stated that he backed away after being struck on the ear by one of the women. He claimed that the defendant kicked the women away and drove his car in reverse, knocking one of the women down with his car door. He testified that the defendant's vehicle struck Officer Wehenkel's cruiser "soft like" and that when the officer stepped out of the car, the defendant drove away, then pulled to the side of the road only a short distance away. Hunter acknowledged that he had not informed police of what he had witnessed.

Dorothy Jones, the defendant's girlfriend of 22 years, testified that she owned the vehicle the defendant was driving at the time of the offenses. She acknowledged that the defendant, who had no driver's license, did not have permission to drive her car. Ms. Jones testified that she was asleep when he took her car.

The defendant, 46 years old and employed as a carpenter, testified that a coworker drove him to the Elks Lodge. He claimed that when he returned to his residence, he discovered that he had no door keys, awakened Ms. Jones to let him in, and then drove Ms. Jones's car the one-and-one-half-block distance back to the lodge. The defendant testified that as he attempted to enter the club, a woman said to him, "What's wrong with you old M-F?" He contended that after he exchanged words with the woman, she "commenced to . . . clawing at [him]" and another woman pushed him towards the parking lot. The defendant testified that a "mob of people" gathered, throwing things at him and attempting to prevent him from entering his vehicle or closing his car door. He maintained that he did not hit anyone and that he had no recollection of striking LaDeana Ellis or dragging her with his car door. The defendant contended that he did not see the police cruiser until after he had hit it and that he stopped only because he thought that the police would help. He testified that Officer Wehenkel did not drive her cruiser into the side of his vehicle until after he had come to a stop. The defendant also denied having done any damage to the interior of the cruiser after his arrest.

The defendant acknowledged that he took Ms. Jones's vehicle without her permission. He took her keys from the television set after she returned to bed. The defendant claimed that he drank his first beer at an Applebee's restaurant at 9:00 or 10:00 p.m. and had only one more beer before his arrest. He denied any drug use.

In rebuttal, the state re-called Officer Karen Wehenkel and Sonda Ellis. Officer Wehenkel testified that she did not observe an injury to the defendant's head or any spilled liquid on his clothing. She emphasized that the defendant's vehicle was still moving when struck by her cruiser. Although the officer did not believe the defendant was intoxicated, she did smell alcohol on his breath. Sonda Ellis testified that she was outside of the Elks Lodge and in the parking lot when she first encountered the defendant.

I

Initially, the defendant claims that the evidence was insufficient to support his convictions for Class D felony evading arrest, assault and vandalism. He does not contest his conviction for second offense driving on a suspended license.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The defendant challenges his conviction of Class D felony evading arrest on the grounds that there was no evidence that he ever received a "signal to stop" within the meaning of Tennessee Code Annotated § 39-16-603 and that none of the elements of the crime occurred on a "street, road, alley or highway," as required by the statute. While the state concedes that the evidence was insufficient for a Class D felony conviction, it insists that the evidence supports a Class E felony conviction.

The offense of felony evading arrest is defined as follows:

(b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any

law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.

(2) It is a defense to prosecution under this subsection that the attempted arrest was unlawful.

(3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Tenn. Code Ann. § 39-16-603(b).

The defendant argues that because Officer Wehenkel did not activate her cruiser's blue lights or siren, there was never a "signal," as required by the statute, to stop his vehicle. In matters of statutory construction, the role of this court is to ascertain and give effect to the intent of the legislature. State v. Williams, 623 S.W.2d 121, 124 (Tenn. Crim. App. 1981). Unless ambiguity requires resort elsewhere to ascertain legislative intent, judicial interpretation of a statute is restricted to the natural and ordinary meaning of the language used. Roddy Mfg. Co. v. Olsen, 661 S.W.2d 868, 871 (Tenn. 1983). "Legislative enactments must be interpreted in their natural and ordinary sense without a forced construction to either limit or expand their meaning." State v. Thomas, 635 S.W.2d 114, 116 (Tenn. 1982). "Courts must construe statutes as a whole and in conjunction with their surrounding parts and their interpretation should be consistent with their legislative purposes." State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretation should express the intent and purpose of the legislation. National Gas Distrib., Inc. v. State, 804 S.W.2d 66, 67 (Tenn. 1991); Loftin v. Langsdon, 813 S.W.2d 475, 478-79 (Tenn. Ct. App. 1991). "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being [aids] to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998).

Although "signal" is not defined in our code, the term is unambiguous as it is used in Tennessee Code Annotated § 39-16-603(b). By using the phrase "any signal," the General Assembly, in our view, intended to encompass a wide range of communications by an officer, not to require the use of blue lights and a siren. The proof established that the officer initially attempted to stop the defendant by using her marked cruiser to block his exit from the Elks Lodge parking lot. She testified that prior to driving into her cruiser, the defendant made eye contact and gunned the engine of his vehicle. After the defendant struck her cruiser, Officer Wehenkel repositioned it to again block the defendant's path. The defendant, however, drove around the cruiser and, when finally forced to the side of the road, remarked, "[I'm] not going to run anymore." In our view, the evidence establishes that the defendant understood the officer's "signal" to stop. See State v. Joe David Sloan, No. W2000-02861-CCA-R3-CD (Tenn. Crim. App., at Jackson, Jan. 4, 2002).

Citing State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568 (Tenn. Crim. App., at Nashville, Aug. 19, 1999), the defendant also argues that the evidence was insufficient for his Class D felony evading arrest conviction because all of the elements of the offense occurred in the Elks

Lodge parking lot, rather than a public "street, road, alley or highway," as required by the statute. In Bradburn, police officers met the defendant in a Wal-Mart parking lot to sell him marijuana as part of a "reverse sting operation." After the transaction, an officer drove his unmarked vehicle directly in front of the defendant's truck and activated his blue lights. When the officer attempted to step out of his car, the defendant "looked at [him] momentarily," then "rammed" the car and sped away. Another officer activated his blue lights and pursued the defendant through the parking lot, across Brookmede Drive, and into the parking lot of the Shady Brook Mall. The defendant argued that because the pursuit took place in a parking lot, he could not be guilty of felony evading arrest. A panel of this court held that because the defendant crossed Brookmede Drive, the evidence was sufficient for a rational jury to find that "at least part of the chase occurred on a street, road, alley, or highway." Bradburn, slip op. at 7. In a footnote, the court interpreted the felony evading arrest statute to require that the flight take place on a "public" road. Id. at n.2. The court nevertheless found that the evidence was insufficient to support the Class D conviction because there was no evidence that the defendant created any risk of death or injury to a third party while he was driving across Brookmede Drive. Id., slip op. at 8.

In our view, the facts in this case cannot be distinguished from those in Bradburn. While there was evidence that the defendant's flight created a risk of death or injury to bystanders in the Elks Lodge parking lot, the risk was in the private parking lot, not on the public roadway, a requirement recognized in Bradburn. Thus, with no evidence of risk after the defendant entered the private street, the evidence was insufficient to sustain a conviction for Class D felony evading arrest. Because the defendant's flight from the Elks Lodge parking lot was onto a public roadway, however, the evidence would have been sufficient to support a Class E felony conviction. The defendant's conviction is reversed rather than modified to the Class E felony only because the trial court failed to properly instruct on the lesser included offenses, as discussed in section III. The cause must be remanded, therefore, for a new trial on Class E felony evading arrest.

With regard to his conviction for assault, the defendant argues that the state failed to rebut his claim of self-defense. The state argues that a rational jury could have rejected the defense theory. Assault is defined as follows:

> (a) A person commits assault who:
> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a). A person is justified in using force against another person when he or she reasonably believes (1) that death or serious bodily injury is imminent and (2) that the force used is immediately necessary to protect against the other person's use or attempted use of unlawful force. Tenn. Code Ann. § 39-11-611(a). The state has the burden of negating any defense raised by the supporting evidence beyond a reasonable doubt. Tenn. Code Ann. § 39-11-201(a)(3).

Initially charged with the aggravated assault of LaDeana Ellis, the defendant was convicted of the lesser included offense of assault. While he does not dispute the sufficiency of the evidence as it relates to the elements of the crime, he does argue that the state failed to present any evidence to contradict his claim of self-defense.

Whether a criminal defendant acted in self-defense is a jury question. Wilson v. State, 574 S.W.2d 52, 54 (Tenn. Crim. App. 1978). In our view, the jury could have reasonably concluded that the severity and the degree of the vehicular assault of Ms. Ellis was disproportionate to the threat presented. There were no weapons. That the jury convicted the defendant of the lesser offense as to LaDeana Ellis and acquitted him on the charges of assaulting Sonda Ellis and Officer Wehenkel suggests that the jury took into account mitigating circumstances. In short, the jury acted within its prerogative in rejecting the self-defense claim.

The defendant contends that the evidence, which was circumstantial in nature, was insufficient to support the vandalism conviction because the state failed to prove that his actions were "knowing." Vandalism is defined by our code as follows:

> (a) Any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty of an offense under this section.
> (b) For the purposes of this section:
> (1) "Damage" includes, but is not limited to:
> (A) Destroying, polluting or contaminating property . . . .

Tenn. Code Ann. § 39-14-108(a) – (b). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20); see also Tenn. Code Ann. § 39-11-302(b).

An offense may be proven by circumstantial evidence alone. Price v. State, 589 S.W.2d 929, 931 (Tenn. Crim. App. 1979). Our scope of review is the same when the conviction is based upon circumstantial evidence as it is when it is based upon direct evidence. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (Tenn. 1961). Where the evidence is entirely circumstantial, the jury must find that the proof is not only consistent with the guilt of the accused but inconsistent with his innocence. There must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except that of guilt. Pruitt v. State, 3 Tenn. Crim. App. 256, 460 S.W.2d 385, 390 (1970). Like all other fact questions, the determination of whether all reasonable theories or hypotheses are excluded by the evidence is primarily a jury question. State v. Tharpe, 726 S.W.2d 896 (Tenn. 1987); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958). The jury is governed by four rules when testing the value of circumstantial evidence: (1) The evidence should be acted upon with caution; (2) all of the essential facts must be consistent with the hypothesis of guilt; (3) the facts must exclude every other reasonable theory except that of guilt; and (4) the facts must establish such a certainty of guilt as to

convince beyond a reasonable doubt that the defendant is the perpetrator of the crime. <u>Marable</u>, 313 S.W.2d at 456.

Photographs demonstrated damage to the rear seat and the interior paneling of the left rear door of Officer Karen Wehenkel's cruiser. Although the officer did not personally witness the destruction, there was no damage when she began her shift and the defendant was the only occupant of the rear seat during the entire evening. The defendant sat in those specific areas of the back seat which were damaged. The defendant had to reposition himself in order to damage the door, indicating a specific intention. At least a portion of the armrest was torn away. In our view, a rational jury could have found beyond a reasonable doubt that the defendant knowingly damaged the interior of Officer Wehenkel's police cruiser.

II

Next, relying on Tennessee Rules of Evidence 404 and 608, the defendant asserts that the trial court erred by allowing the state to cross-examine him at trial regarding the affidavit of income he executed for appointment of counsel. He also contends that admission of the affidavit into evidence was improper.

During cross-examination by the state, the defendant testified that he owned a 1982 Cadillac El Dorado automobile at the time of the offenses and that he was employed by S&S Tree Service. When the state questioned the defendant on his affidavit, wherein he listed no assets and no employment, defense counsel lodged an objection based on Rule 404. The trial court determined that the evidence was material on the issue of credibility and allowed the state to cross-examine. The defendant then acknowledged that he did not list his employment or his assets, explaining that he "couldn't afford an attorney."

Initially, Tennessee Rule of Evidence 404, which pertains to the admissibility of character evidence, is inapplicable. The state's cross-examination regarding the content of the affidavit was material to the defendant's character for truthfulness or untruthfulness. Rule 404(a)(3) specifically provides that the rule is inapplicable to "[e]vidence of the character of a witness as provided in Rules 607, 608, and 609," which govern the impeachment of witnesses.

While Rule of Evidence 404 provides a limited basis for the admission of character evidence as substantive evidence, Rule 608 permits character evidence to be used for impeachment purposes. Rule 608 provides in pertinent part as follows:

> Specific Instances of Conduct. Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crimes as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness

being cross-examined has testified.  The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;
> (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, . . . ; and
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.  If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination. . . .

Tenn. R. Evid. 608(b).  A criminal act which does not qualify as a criminal conviction is governed by Rule 608.

In this instance, the state failed to provide notice of its intention to present the evidence, as required by the rule.  The defendant testified on direct examination before the trial court conducted a hearing.  There was a jury-out interruption of the cross-examination by the state during which the trial court ruled that the state could ask about the affidavit of income.  In our view, the state should have given the defense pre-trial notice of its intent to cross-examine the defendant on the affidavit.  Nevertheless, the error was harmless.  While there was procedural error, the evidence otherwise would have been a proper basis for inquiry.  The trial court correctly adjudged credibility to be a key issue at trial.  Multiple eyewitnesses testified to varying versions of the events.  The defendant's alleged perjury, committed in a proceeding relative to this case, is highly probative of his character for truthfulness.  Further, because it bears no resemblance to the charged offenses, any unfair prejudicial effect was minimal.  Granting the defense additional time to prepare for the cross-examination would have served no apparent purpose.

The trial court did commit error by admitting the affidavit of income.  The document should not have been passed to the jury.  Tennessee Rule of Evidence 608(b) provides that prior bad acts submitted for impeachment purposes "may not be proved by extrinsic evidence."  The state maintains that the affidavit was properly admitted under Rule 613, which permits the use of prior inconsistent statements to impeach a witness.  Yet extrinsic evidence of a prior inconsistent statement is inadmissible except under the terms of Tennessee Rule of Evidence 613(b), which provides as follows:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

See also State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982). The purpose of Rule 613(b) is to allow introduction of otherwise inadmissible extrinsic evidence for impeachment. State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998). When presented with a prior inconsistent statement a "witness then has several possible responses: the witness can admit, deny, or not remember making all or part of the statements." Neil P. Cohen et al., Tennessee Law of Evidence § 6.13[5][a] (4th ed. 2000). Extrinsic evidence of a prior inconsistent statement remains inadmissible when a witness unequivocally acknowledges having made the prior statement. Martin, 964 S.W.2d at 567; Cohen et al., at § 6.13[5][a]. If the witness admits making the prior inconsistent statement, any extrinsic proof of the statement would be cumulative. Here, the defendant candidly admitted the contents of his affidavit and extrinsic proof should have been excluded. Nevertheless, given the overwhelming evidence of guilt, the error was harmless.

## III

The defendant next asserts that the trial court erred by failing to instruct the jury on the lesser included offenses of Class D felony evading arrest. He argues that the trial court should have instructed the jury on Class E felony evading arrest and misdemeanor evading arrest. The state concedes that the trial court should have instructed on the Class E offense, but maintains that there was no error by its failure to instruct on misdemeanor evading arrest.

With regard to jury instructions, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court revised the standards for the determination of lesser included offenses. In a companion case, State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), our high court confirmed that it had overruled that portion of State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), in which it had established a distinction between lesser grades or classes of offenses and lesser included offenses. In Burns, the court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense is a lesser included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

> (1) a different mental state indicating a lesser kind of culpability; and/or
>
> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
>
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

6 S.W.3d at 466-67.

Class E felony evading arrest occurs when "any person, while operating a motor vehicle on any street, road, alley or highway in this state, . . . intentionally flee[s] or attempt[s] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). It becomes Class D felony evading arrest when "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." Tenn. Code Ann. § 39-16-603(b)(3). Thus, because all of its statutory elements are included within the statutory elements of Class D felony evading arrest, Class E felony evading arrest is a lesser included offense thereof under part (a) of the Burns analysis.

In our view, however, misdemeanor evading arrest would not qualify as a lesser included offense of Class D felony evading arrest. The misdemeanor offense is defined as follows:

> [I]t is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:
> > (A) Knows the officer is attempting to arrest the person; or
> > (B) Has been arrested.

Tenn. Code Ann. § 39-16-603(a)(1). As such, misdemeanor evading arrest requires a defendant to have been arrested or to have knowledge of his impending arrest at the time of his flight. See id. The Class D felony offense, in contrast, requires only that a defendant have received a signal to "stop" from a law enforcement officer. See Tenn. Code Ann. § 39-16-603(b). A signal to "stop" may be for an investigatory stop or for something other than an arrest. Because misdemeanor evading arrest includes statutory elements not found in Class D felony evading arrest, part (a) of the Burns test is not satisfied. See State v. Joe David Sloan, No. W2000-02861-CCA-R3-CD (Tenn. Crim. App., at Jackson, Jan. 4, 2002) (holding that disobedience to police officers, requiring failure to comply with "any lawful order or direction," is not a lesser included offense of Class E felony

evading arrest, which requires failure to comply with a specific signal to stop); State v. Frank Johnson, No. W2000-00386-CCA-R3-CD (Tenn. Crim. App., at Jackson, June 26, 2001) (same); but see Bradburn, slip op. at 12 (pre-Burns opinion remanding for new trial on Class E felony evading arrest and misdemeanor evading arrest as lesser included).

Further, misdemeanor evading arrest is not a lesser included offense of Class D felony evading arrest under part (b) of the Burns test. Because both misdemeanor evading arrest and felony evading arrest require that the defendant "intentionally" flee, there is no "different mental state indicating a lesser kind of culpability." See Tenn. Code Ann. § 39-16-603(a) – (b); Burns, 6 S.W.3d at 467. Likewise, misdemeanor evading arrest does not present "a less serious harm or risk of harm to the same person, property or public interest" than Class D felony evading arrest. See Burns, 6 S.W.3d at 467. Flight from an arresting law enforcement officer, required for the misdemeanor offense, presents a serious risk of harm to those involved and, depending upon the circumstances, to third parties and bystanders. Because the flight may be by "any means of locomotion," the misdemeanor statute's application is itself broad enough to encompass one of the harms – flight in a motor vehicle – addressed by the felony statute. Additionally, misdemeanor evading arrest may be committed on public or private property. Felony evading arrest requires travel on a public roadway; thus, the two statutes address different interests. Finally, because misdemeanor evading arrest does not consist of facilitation, attempt, or solicitation to commit felony evading arrest, part (c) of the Burns test is inapplicable. In consequence, the trial court did not err by failing to instruct the jury on the offense of misdemeanor evading arrest.

Having determined that Class E felony evading arrest is a lesser included offense of Class D felony evading arrest, our next inquiry is whether the evidence warranted an instruction on the offense. See Burns, 6 S.W.3d at 467. The guiding principle is that if there is evidence in the record from which the jury could conclude that a lesser included offense was committed, there must be an instruction for the lesser offense. See Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975). In Burns, our supreme court adopted a two-step process for determining whether the evidence justifies a jury instruction on a lesser included offense:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Burns, 6 S.W.3d at 469.

In the light most favorable to existence of the offense, it is our view that there is sufficient evidence to support a conviction for Class E felony evading arrest. The trial court erred by failing

to instruct the jury on that offense. In <u>State v. Ely</u>, our supreme court confirmed that the failure to charge a lesser included offense qualifies as an error of constitutional proportions:

> That the right of trial by jury is of constitutional dimension is evidenced by its embodiment in Article I, section 6 of the Tennessee Constitution, which states, "the right of trial by jury shall remain inviolate." Accordingly, we hold that this constitutional right is violated when the jury is not permitted to consider <u>all</u> offenses supported by the evidence.

48 S.W.3d 710, 727 (Tenn. 2001) (emphasis in original); <u>see also</u> <u>State v. Bowles</u>, 52 S.W.3d 69 (Tenn. 2001). Our high court directed that in reviewing error arising from a failure to charge one or more lesser included offenses, "the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt." <u>Ely</u>, 48 S.W.3d at 727.

Here, the failure to charge the lesser included offense of Class E felony evading arrest was not harmless beyond a reasonable doubt. The jury was instructed only on the indicted offense of Class D felony evading arrest. The evidence, however, was insufficient to support a conviction for that offense and the jury should not have been instructed thereon. As such, the trial court's error was two-fold, leaving the jury with the option of convicting the defendant of the highest possible offense or acquitting him altogether. The defendant is, therefore, entitled to a new trial on the offense of Class E felony evading arrest.

IV

Finally, the defendant asserts that the trial court erred by denying his request for a jury instruction on the defense of effective consent as to the charge of aggravated assault upon LaDeana Ellis. The state maintains that the defense is not raised by the facts.

The effective consent defense is contained in Tennessee Code Annotated § 39-13-104:

> When conduct is charged to constitute an offense under this part because it causes or threatens bodily injury, effective consent to such conduct or to the infliction of such injury is a defense if:
> (1) The bodily injury consented to or threatened by the conduct consented to is not serious bodily injury; or
> (2) The conduct and the harm are reasonably foreseeable hazards:
> (A) Of joint participation in a lawful athletic contest or competitive sport; or
> (B) For any concerted activity of a kind not forbidden by law.

"'Effective consent' means assent in fact, whether express or apparent, including assent by one legally authorized to act for another." Tenn. Code Ann. § 39-11-106(a)(9). The Sentencing Commission Comments indicate that the effective consent defense was intended to apply "where the conduct and injury are reasonably foreseeable hazards of sports or other lawful activities, such as

medical treatments, scientific experiments or an occupation." Tenn. Code Ann. § 39-13-104, Sentencing Commission Comments; see also State v. John Malone, No. M2000-02265-CCA-R3-CD (Tenn. Crim. App., at Nashville, Nov. 16, 2001) (noting application contemplated by Sentencing Commission Comments and holding defense inapplicable to defendant's assault upon merchant attempting to detain him for shoplifting).

In our view, the facts presented do not implicate the defense of effective consent. The threat of bodily injury posed to LaDeana Ellis by the defendant's actions, striking her with a moving vehicle, was "serious." See Tenn. Code Ann. § 39-13-104(1). Ms. Ellis and the defendant were not engaged in any joint activity at all, sporting or otherwise, prior to their altercation. See Tenn. Code Ann. § 39-13-104(2). Finally, there was no evidence at trial that Ms. Ellis provided either express or apparent consent to being struck by the defendant's car.

The judgment of conviction for Class D felony evading arrest is reversed and the cause is remanded for a new trial on a charge of Class E felony evading arrest. Otherwise, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE