# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 6, 2007

## STATE OF TENNESSEE v. CARLOS BUSH

### Appeal from the Criminal Court for Shelby County
### No. 04-04780    Chris Craft, Judge

### No. W2005-02479-CCA-R3-CD  - Filed November 29, 2007

Appellant, Carlos Bush, was convicted by a jury of one count of aggravated robbery.  As a result, Appellant was sentenced to serve fifteen years in incarceration as a Range II multiple offender.  After the denial of a motion for new trial and a timely notice of appeal, Appellant presents the following issues for our review: (1) whether the evidence is sufficient to support the conviction; (2) whether the photographic lineup was unduly suggestive; (3) whether the trial court erred in allowing a witness to testify regarding Appellant's prior incarceration; (4) whether the trial court improperly admitted hearsay testimony; (5) whether the trial court improperly refused to grant a recess to allow Appellant to prepare curative measures for alleged evidentiary errors; and (6) whether the trial court improperly enhanced Appellant's sentence by applying an enhancement factor that was not determined by a jury in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).  We determine that the evidence was sufficient to support the conviction, that the photographic lineup was proper and that the trial court did not improperly admit hearsay or statements about Appellant's prior incarceration.  With regard to Appellant's sentence, we determine that review of the issue is not necessary to do substantial justice, and consequently, that no plain error was committed on the part of the trial court.  Further, the application of enhancement factors (1) and (16) justified the enhancement of Appellant's sentence from twelve years to fifteen years.  Accordingly, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, and ALAN E. GLENN, JJ., joined.

Edward P. Bronston, Memphis, Tennessee, for the appellant, Carlos Bush.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Robert Carter and Dean DeCandia, Assistant District Attorneys General,for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Sometime late in the evening of February 18 or early in the morning of February 19, 2004, the victim, Jesus Morales, was returning home to his apartment in Memphis. The victim had worked all day, then went to play pool before returning to his apartment. As the victim drove into the parking lot at his apartment, he had to drive around to look for a parking space. The victim noticed a dark-colored SUV driving behind him and assumed that the driver of the SUV was also looking for a place to park. The victim finally found a parking space, pulled his car into the spot and turned off the engine. At that time, he saw the SUV about twelve feet behind his car. The victim saw two African-American men approach his car through the rear-view mirror. One of the men had a gun. The man with the gun was "real heavy." The other man was "skinny, tall." The gunman came to the driver's side of the car, pointed the gun at the victim and demanded money. The victim told the man that he did not have any money. The gunman again demanded money, and the victim again insisted that he did not have any money. The victim was afraid that the two men were going to kill him, so he tried to wrestle the gun away from the heavy man. In the meantime, the other attacker had opened the passenger-side door to the victim's car and had gotten inside. During the tussle for the gun, both the gunman and the other attacker hit the victim in the head. The "skinny, tall" man took the victim's wallet from his pocket. The victim begged the man to take the money but leave his "papers." According to the victim, the man took the money and his papers; then the gunman threw the wallet away. The wallet contained approximately $200 in cash, the victim's immigration card and the victim's driver's license.

After the two men left, the victim called the police. The police arrived to process the scene, and the victim was transported to the hospital for treatment for the injuries he sustained during the robbery.

Sergeant David Ayers was assigned to the case as the investigator. During the course of the investigation, LaCurtis Waller was arrested as a suspect in the robbery. Mr. Waller admitted his participation in the robbery and implicated Appellant as the other person involved in the robbery. At that time, Sergeant Ayers created two photographic lineups - one containing Appellant's picture along with five other individuals and one containing Mr. Waller's picture along with five other individuals. The photographic lineups were shown to the victim by Sergeant Robert Schoggins, who is fluent in Spanish, the victim's preferred language. The victim identified both Appellant and Mr. Waller as the perpetrators of the crime.

At trial, Mr. Waller testified that he pled guilty to the robbery of the victim. According to Mr. Waller, Appellant came to his house and asked if he wanted to "make a little sting." Mr. Waller stated that a "sting" was a slang term for a robbery. Mr. Waller told Appellant he was not interested,

but Appellant persisted. Mr. Waller finally agreed to go with Appellant. Mr. Waller testified about his participation in the robbery. Mr. Waller stated that he:

> [J]umped out of the passenger's side of the truck and went up to the car and I had told [the victim] to give me his money and everything. You know, he wouldn't come out, he wouldn't give it to me. So I guess he was taking too long, [Appellant] had got out too, came to the driver's side. And the guy grabbed the gun when he grabbed my - - he grabbed my gun, you know, he came around and got the - - [Appellant] hit the dude and went in his pockets to get his stuff out because he wasn't coming out of it, he wasn't going to give up his wallet. He had been drinking, I guess. He was drunk. He wasn't going to come - - he wasn't coming out of his pocket.
>
> So [Appellant] came around and reached, like reached over and was going in his pocket and I had snatched the gun. See, I ran and got in the truck. I was telling him, like, come on, let's forget it, man, you know what I'm saying, he wasn't coming on down, I wasn't fixing to - - like it was going to escalate into something more than a robbery, so I just ran and got in the truck, told him to come on.

Mr. Waller stated that Appellant:

> [J]umped out of the truck when [the victim] grabbed the gun - - when he seen the dude wasn't coming out, he had grabbed my gun, he jumped out of the truck, he came to assist me. Came around, like jumped in the path - - like in between us. I had the door open. I had pulled the door open. [Appellant] [k]ind of squeezed in. Like in between us, snatched the gun, he hit the dude, started going in his pockets because he wasn't coming, he wasn't coming out, he wasn't going to give his wallet up. He went in his pocket and I went to the - - ran to the truck, told him to come on, let's roll, man.

Mr. Waller saw Appellant take a wallet, a switchblade and a little gold necklace from the victim. Appellant did not offer any proof at trial.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery. After a sentencing hearing, the trial court sentenced Appellant to fifteen years as a Range II multiple offender. Appellant filed a motion for new trial. After a hearing, the trial court denied the motion for new trial. Appellant filed a timely notice of appeal. On appeal, Appellant argues: (1) the evidence is insufficient to support the conviction; (2) the photographic lineup was unduly suggestive; (3) the trial court erred in allowing a witness to testify regarding Appellant's prior incarceration; (4) the trial court improperly admitted hearsay testimony; (5) the trial court improperly refused to grant a recess to allow Appellant to prepare curative measures for evidentiary errors; and (6) the trial court improperly enhanced Appellant's sentence by applying an enhancement factor that was not determined by a jury in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).

*Analysis*

*Suppression of Photographic Line-up*

On appeal, Appellant contends that the "pre-trial photographic line-up was impermissibly suggestive." Specifically, Appellant argues that the police showed the victim a "single picture" and that the use of a "single picture violated his due process rights and the identification testimony should have been excluded." In the alternative, Appellant argues that the identification process violated his due process rights because there were discrepancies in the testimony regarding the process by which the victim identified Appellant. In that regard, Appellant argues that the victim testified he viewed the photographic line-ups at the Criminal Justice Center when the forms indicate that the victim viewed the photographic line-ups at a different location. Further, Appellant argues that the police officer testified that the victim viewed both of the photographic line-ups on the same day, but that notations on the photographic line-ups themselves indicate they were viewed on separate days. The State argues that Appellant has waived his right to raise this issue on appeal for failure to file a motion to suppress the photographic line-up prior to trial and by failing to object to the introduction of the testimony at trial. Moreover, the State argues, the issue has no merit because the testimony indicates that the victim was shown a photographic lineup, not one photograph.

The record does not contain a motion to suppress the photographic line-up. Furthermore, the transcript of the trial does not indicate that counsel for Appellant objected to the introduction of the identification testimony or photographic line-up at trial. Tennessee Rule of Criminal Procedure 12(b)(2)(C) states that motions to suppress evidence "must" be raised prior to trial. According to Tennessee Rule of Criminal Procedure 12(f), "[u]nless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with: (1) rules requiring such matters to be raised pretrial . . . ." Moreover, Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." The failure to object, request a curative instruction or move for a mistrial is typically grounds for waiver of an issue on appeal. *State v. Walker*, 910 S.W.2d 381, 386 (Tenn. 1995). "When a party does not object to the admissibility of evidence, the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible.'" *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981)). Consequently, because Appellant failed to file a motion to suppress the photographic line-up prior to trial and failed to object to the introduction of the testimony at trial, this issue is waived.

*Evidentiary Issues During Mr. Waller's Testimony*

Next, Appellant contends that this Court should overturn Appellant's conviction because the trial court improperly allowed a witness to testify regarding Appellant's prior incarceration. Specifically, Appellant challenges testimony by Mr. Waller that Appellant "had just got out of the penitentiary" and testimony by Mr. Waller that Appellant told Mr. Waller to tell the police that he

was not with him when he committed the robbery. Appellant argues that such testimony was hearsay. Appellant also argues that the testimony violated the trial court's pre-trial ruling prohibiting testimony about Appellant's prior bad acts. Further, Appellant argues that the trial court should have granted him a recess to prepare proper curative measures once the improper testimony was admitted. As a result of the trial court's actions, Appellant states that he was prejudiced despite the trial court's curative instruction to the jury. The State, on the other hand, submits that the admission of the testimony was proper because Appellant "opened the door to such questioning" and that the trial court gave a proper curative instruction to the jury.

Apparently, prior to trial, there was a hearing in which the trial court prohibited the parties from introducing evidence or testimony about any pending or prior crimes committed by Appellant or Appellant's potential gang membership.[1] On direct examination, Mr. Waller testified that when he was arrested, he "advised police" that Appellant was involved in the robbery. During the cross-examination of Mr. Waller by Appellant's counsel, Mr. Waller admitted that he pled guilty to several counts of aggravated robbery for concurrent ten-year sentences. Then, Mr. Waller admitted that he attempted to recant his original story to investigators about Appellant's involvment in the crime. At that time, Counsel for Appellant introduced into evidence a letter written by Mr. Waller that stated, "I do not know [Appellant]. The detectives asked me how did I get to the apartments I said he dropped me off from my cousin's house. They made me include him. I don't know him." Counsel for the State did not object to the introduction of the letter.

On redirect examination, Mr. Waller testified that he wrote the letter when he was incarcerated right before he entered a guilty plea. Mr. Waller acknowledged that the letter was inconsistent with the statement implicating Appellant that Mr. Waller gave to detectives on the night that he was arrested. In order to explain the inconsistency, Mr. Waller testified that at the time he gave the statement to detectives, he felt "safe," but at the time he wrote the letter he did not feel "safe." Mr. Waller claimed he did not feel safe because Appellant urged him to "tell [the police] I weren't [sic] with ya'll," when the robbery was committed. Counsel for Appellant objected to Mr. Waller's testimony on the basis of hearsay. At that time, Mr. Waller clarified that Appellant made the statement, urging Mr. Waller to "cut [him] loose" because Mr. Waller had "already signed for [his] time." The trial court ruled as follows, "All right, I'm going to rule that the statements he made to the defendant about I'll say I wasn't with you are not going to - they are not being offered to show the truth of the matter asserted but only to show [Mr. Waller's] state of mind."

At that point, Counsel for the State sought to introduce the written statement made by Mr. Waller to detectives in which he implicated Appellant in the robbery. Counsel for Appellant did not object to the introduction of the statement into evidence. Because this statement was inconsistent with Mr. Waller's prior statement to investigators in which he claimed that he did not know

---

[1] The record does not contain a motion in limine filed by Appellant to exclude such evidence or a transcript of a hearing in which the trial court ruled on the matter. Our review of the record reveals that during a bench conference at trial, the parties alluded to a pre-trial hearing on the matter in which the trial court prohibited the State's witnesses from testifying about Appellant's past crimes, pending crimes or gang membership unless Appellant opened the door to the testimony.

Appellant, the trial court instructed the jury that they should consider any prior inconsistent statements only for the purposes of testing the witness's credibility and not as substantive evidence of the truth of the matter asserted in such statements.

The State then assumed the redirect examination of Mr. Waller. During that testimony, while explaining why he felt "threatened" when he penned the handwritten note in which he claimed that he did not know Appellant, Mr. Waller mentioned that Appellant "had just got [sic] out of the penitentiary." Counsel for Appellant objected to the statement, arguing that it violated the pretrial order prohibiting testimony of Appellant's prior bad acts. After a lengthy discussion on the matter, the trial court determined that he would give the jury a "curative instruction that . . . they can only consider [the fact that Mr. Waller lied to investigators because he was scared of Appellant] for the credibility of [Mr. Waller]" and that counsel for Appellant could voir dire the witness about his personal knowledge as to Appellant's incarceration.

Counsel for Appellant asked for a recess at that time to "prepare a brief" regarding curative measures. The trial court denied the request and offered to give the jury a curative instruction. The trial court gave the following instruction before the conclusion of Mr. Waller's testimony and again at the conclusion of the trial:

> If from the proof you find the defendant has been previously incarcerated, you can consider such only for the purpose of it's effect, if any, on this witness'[s] state of mind in making a statement. It cannot be considered by you as evidence of his guilt of the offense for which he is now on trial.

In our view, this matter is governed by Tennessee Rule of Evidence 613, which sets out the procedure for utilizing the prior statement of a witness for impeachment purposes. In an attempt to impeach the testimony of Mr. Waller, counsel for Appellant introduced a handwritten statement as a prior inconsistent statement. In that statement, Mr. Waller claimed that he did not know Appellant. As he was explaining the origin of the statement and why it was inconsistent with the one implicating Appellant, Mr. Waller made the two comments that Appellant complains about on appeal. Mr. Waller testified that Appellant told him to "tell [the police] I weren't [sic] with ya'll" and that he felt threatened to do so because Appellant had "just got [sic] out of the penitentiary." Impeachment evidence, like any evidence, must be relevant in order to be admitted into evidence. *State v. Leach*, 148 S.W.3d 42, 56 (Tenn. 2004). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

The rules of evidence limit the introduction into evidence of prior inconsistent statements of witnesses. Tennessee Rule of Evidence 613(b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice require otherwise. This provision does not apply to admissions of a party opponent as defined in Tennessee Rule of Evidence 803(1.2).

*See also State v. Reece*, 637 S.W.2d 858, 861 (Tenn. 1982). Tennessee Rule of Evidence 613(b) allows the introduction of otherwise inadmissible extrinsic evidence for impeachment. *State v. Martin*, 964 S.W.2d 564, 567 (Tenn. 1998); *see also State v. Smith*, 24 S.W.3d 274, 280-81 (Tenn. 2000). A prior inconsistent statement introduced for purposes of impeachment may be considered only on the issue of credibility and not as substantive evidence. *Reece*, 637 S.W.2d at 861. When presented with a prior inconsistent statement a "witness has several possible responses: the witness can admit, deny, or not remember making all or part of the statements." Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence § 613[5][a] (5th ed. 2005). If the witness admits making the prior inconsistent statement, any extrinsic proof of the statement would be cumulative and therefore inadmissible. *Id.* However, if the witness unequivocally admits making the prior inconsistent statement, extrinsic proof of the statement is not admissible. *State v. Martin*, 964 S.W.2d 564, 567 (Tenn. 1998).

Analyzing the situation herein in the context of Rule 613, we note that in the case herein, Mr. Waller freely admitted on cross-examination that he made the prior inconsistent statement to police. Thus, extrinsic evidence of the prior inconsistent statement would ordinarily be inadmissible. *Martin*, 964 S.W.2d at 567. Counsel for the State could have objected to the introduction of the letter. From the record, we have determined that no objection was made to the introduction of the statement. On redirect, Mr. Waller was "afforded the opportunity to explain" why he made the statement. Tenn. Rule Evid. 613. Mr. Waller made the allegedly offending comments about which Appellant complains, "tell them I weren't [sic] with ya'll" and Appellant "had just got [sic] out of the penitentiary" during his explanation of the origin of the inconsistent statement. Counsel for Appellant, in his effort to introduce extrinsic evidence of a prior inconsistent statement, opened the door making it permissible under Tenn. R. Evid. 613 for the witness to explain why the prior inconsistent statement was made. Thus, the witness's complained of statements did not violate the motion in limine.

Appellant further claims that the statement, "tell them I weren't [sic] with y'all" was hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A statement can be an oral or written assertion. Tenn. R. Evid. 801(a)(1). A hearsay statement is not admissible unless it is shown to be admissible via an exception contained in the rules of evidence or otherwise by law. *See* Tenn. R. Evid. 802.

We conclude that the statement was not hearsay as it was not offered for the truth of the matter asserted. The trial court properly determined that the statement was made to show Mr. Waller's state of mind at the time he wrote the letter in which he claimed he did not know Appellant

and to explain his inconsistent statement to investigators. The trial judge instructed the jury to this effect. The statement was not offered to prove that Appellant was involved in the robbery of the victim. Even if the statement could somehow be considered hearsay, it would be admissible pursuant to Tennessee Rule of Evidence 803(1.2)(A), which provides a hearsay exception for a statement offered against a party that is "the party's own statement in either an individual or a representative capacity." Appellant is not entitled to relief on this issue.

### Curative Instruction

Appellant complains that the trial court improperly denied a recess to allow Counsel for Appellant to prepare curative measures after Mr. Waller testified regarding Appellant's prior incarceration.

After a lengthy discussion among counsel for both parties and the trial court, the trial court gave the jury a curative instruction, informing them on the proper use of Mr. Waller's testimony. The trial court's curative instruction was sufficient to counter the potential for prejudice, and the law presumes that juries follow the instructions that they receive absent clear and convincing proof to the contrary. *See State v. Hall*, 976 S.W.2d 121, 148 (Tenn. 1998); *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). This issue is without merit.

### Sufficiency of the Evidence

Next, Appellant contends that the evidence was insufficient to sustain his conviction for aggravated robbery. Specifically, Appellant submits that the "State has failed to carry its burden of proving beyond a reasonable doubt that he is guilty of aggravated robbery" because the "police found nothing associated with the robbery - no gun or money after the robbery. No prints were found. No one witnessed the alleged aggravated robbery." The State counters that the victim and Mr. Waller both identified Appellant as being involved in the robbery and that the victim picked Appellant out of a photographic line-up. Therefore, according to the State, there was ample evidence to sustain the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may

be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Appellant was convicted of aggravated robbery. Pursuant to T.C.A. § 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402.

At the outset, we acknowledge that it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Viewing the evidence in a light most favorable to the State, when the police interviewed Mr. Waller, he implicated Appellant as a participant in the robbery. The victim made a positive identification of Appellant from a photographic lineup. The victim again positively identified Appellant at trial and testified that Appellant robbed him with a gun. We determine that the proof offered at trial was more than sufficient to support Appellant's conviction for aggravated robbery. Appellant is not entitled to relief on this issue.

*Sentencing*

Lastly, Appellant complains that the trial court erred in sentencing him. Specifically, Appellant argues that the trial court improperly enhanced his sentence because it determined that he was a leader in the commission of the offense.[2] In that regard, Appellant argues that the trial court erred because it "imposed a sentence enhancement for facts that were not determined by a jury beyond a reasonable doubt." Further, Appellant argues that the trial court "erred as a matter of law

---

[2]Effective June 7, 2005, the Tennessee General Assembly, in response to the United States Supreme Court case of *Blakely v. Washington*, 542 U.S. 296 (2004), amended Tennessee Code Annotated sections 40-35-102, -210, and -401 to reflect the advisory nature of enhancement factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 8. The amendment, among other things, removed the presumptive sentence language from our Sentencing Act and mandated only that the trial "court shall impose a sentence within the range of punishment. . . ." *Compare* T.C.A. § 40-35-210(c) (Supp. 2005) *with* T.C.A. § 40-35-210(c) (2003). The legislature also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. In addition, if a defendant committed a criminal offense on or after July 1, 1982 and was sentenced after June 7, 2005, such defendant can elect to be sentenced under these provisions by executing a waiver of their ex post facto protections. *Id.* Appellant herein committed the offenses on February 18 or 19 of 2004 and was sentenced on August 9, 2005. There is no waiver executed by Appellant in the record herein. Thus, the amendments to the Sentencing Act do not apply to Appellant.

by sentencing Appellant in excess of the maximum authorized by the facts which were established beyond a reasonable doubt." The State, on the other hand, argues that the trial court properly sentenced Appellant.

Recently, in response to *Cunningham v. California*, 549 U.S. ___, 127 S. Ct. 856 (2007), the Tennessee Supreme Court issued an opinion on remand from the United States Supreme Court in *State v. Gomez*, No. M2002-01209-SC-R11-CD, ___ S.W.3d ___, 2007 WL 2917726 (Tenn. Oct. 9, 2007) ("*Gomez II*") that affects our review of the application of enhancement factors to a defendant's sentence. On initial review of the issues in *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005) ("*Gomez I*"), which was filed on April 15, 2005, the court concluded that the defendants were limited to plain error review of their sentencing claims regarding the Sixth Amendment due to their failure to preserve the issues for plenary review. In *Gomez II*, the court adhered to their decision that the defendants had waived plenary appellate review of their sentencing claims, but determined that in light of the *Cunningham* decision, a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than the defendant's prior convictions violates the defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez*, ___ S.W.3d ___, 2007 WL 2917726, at *6.

In the case herein, Appellant's sentencing hearing was held on August 8, 2005, and his motion for new trial was filed on September 6, 2005, both after the filing of the *Gomez I* opinion. Appellant raised the challenge to his sentence based on the Sixth Amendment for the first time in his motion for new trial. In *Gomez I*, the court determined that the issue was waived because the defendants "did not raise this constitutional challenge at their . . . sentencing hearing or in their motions for new trial, nor did they raise it in the Court of Criminal Appeals." *Gomez*, 163 S.W.3d at 648. After the release of the court's opinion in *Gomez I,* this Court determined that a failure to raise the Sixth Amendment challenge to a sentence at the sentencing hearing results in a waiver of the issue for plenary review. *See, e.g.*, *State v. Mickey Lee Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *5 (Tenn. Crim. App., at Knoxville, Sept. 15, 2005), *perm. app. denied*, (Tenn. Feb. 21, 2006); *State v. Karl Blake*, No. M2004-02731-CCA-R3-CD, 2005 WL 2205877, at *5 (Tenn. Crim. App., at Nashville, Sept. 8, 2005); *State v. Billy R. Shelley*, No. E2004-00145-CCA-R3-CD, 2005 WL 1798637, at *4 (Tenn. Crim. App., at Knoxville, Jul. 29, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005).

This Court may, in an exercise of its discretion, consider an issue which has been waived. However, in order for this Court to find plain error, the error must affect a substantial right of the accused. Tenn. R. Crim. P. 52(b). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); *see also* Tenn. R. Crim. P. 52(b).

Rule 52(b) of the Tennessee Rules of Criminal Procedure makes it clear that the plain error rule is not a remedy to be used in many situations. The intention of the rule is to serve the ends of justice. Therefore, it is invoked "only in exceptional circumstances [where necessary] to avoid a miscarriage of justice." *Adkisson*, 899 S.W.2d at 639 (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)). Appellate courts are advised to use it sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *Id.*; *see also State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

"Because the *Adkisson* test provides a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection," the Tennessee Supreme Court formally adopted this test when reviewing a record for plain error. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). In doing so, it reemphasized that the presence of all five factors must be established by the record before the existence of plain error can be recognized and that complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* The "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Id.* (citing *Adkisson*, 899 S.W.2d at 642).

Taking plain error review into account, we note that on appeal Appellant does not challenge the trial court's application of enhancement factors (1) and (16). *See* T.C.A. § 40-35-114 (2006).[3] Instead, Appellant challenges the application of enhancement factor (3) because "the trial court erred as a matter of law when it imposed a sentence enhancement for facts that were not determined by a jury beyond a reasonable doubt" in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).

Turning to the factors necessary for plain error review, we note that the record is clear as to what occurred in the trial court. Appellant herein was convicted of aggravated robbery, a class B felony. As a Range II offender, Appellant was subject to a sentence of not less than twelve nor more than twenty years. T.C.A. § 40-35-112(b)(2). In determining the length of Appellant's sentence, the trial court relied on the following enhancement factors: (1) the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; and (16) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. T.C.A. § 40-35-114(1), (2), & (16) (2006). After considering Appellant's poor upbringing as a mitigating factor, but giving it very little weight, the trial court sentenced Appellant to fifteen years.

Next, it is clear, as a result of the decision in *Gomez II*, that the trial court breached a clear and unequivocal rule of law by applying an enhancement factor on the basis of judicially determined facts that related to items other than Appellant's prior convictions. Specifically, the trial court

---

[3]Appellant herein was sentenced in August of 2005. T.C.A. § 40-35-114 was amended in 2005 and the enhancement factors were renumbered. At the sentencing hearing, the trial court referred to the enhancement factors by their old designations, (2), (3), and (21). *See* T.C.A. § 40-35-114 (2003). In order to maintain clarity and consistency in our opinions, we will refer to the enhancement factors by the designations that appear in the 2005 amendments, the designations that were in effect at the time that Appellant was sentenced.

concluded that Appellant was a leader in the commission of the offense. The application of enhancement factor (2) breached a clear and unequivocal rule of law. *Gomez*, ___ S.W.3d ___, 2007 WL 2917726, at *6. The second prerequisite for plain error review is therefore satisfied.

Further, we determine that a substantial right of Appellant has been adversely affected because the trial court's application of enhancement factor (2) deprived Appellant of his Sixth Amendment right to have a jury determine whether those enhancement factors applied. *Id.* at *6 (citing *Cunningham*, 127 S. Ct. at 860)).

However, we determine that consideration of the trial court's error via plain error review, in this case, is not necessary to do substantial justice. As set forth above, the trial court relied on the following enhancement factors to enhance Appellant's convictions: "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" and "the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." T.C.A. § 40-35-114(1) & (16) (2006). A trial court can "properly consider without jury findings a defendant's prior convictions, as well as prior criminal behavior admitted to by a defendant, when imposing sentence." *Gomez*, ___ S.W.3d ___, 2007 WL 2917726, at *7 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000)). Further, the trial court's application of the enhancement factor that Appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult does not offend the Sixth Amendment. *See id*. This enhancement factor, like the enhancement factor for prior criminal convictions, is proven on the basis of facts gleaned from Appellant's criminal history, not from judicially determined facts. While the presentence report does not appear in the record on appeal, the transcript of the sentencing hearing reveals that Appellant was, at a minimum, previously convicted of aggravated robbery and possession of a controlled substance. The record also indicates that Appellant committed at least four crimes as a juvenile that would have been felonies if committed by an adult. These included two burglaries, a theft, and a possession of marijuana. As a result of the extensive nature of Appellant's prior criminal convictions, both as a juvenile and an adult, we conclude that the application of these enhancement factors alone justifies the trial court's decision to enhance Appellant's sentence from the twelve year minimum to fifteen years, for aggravated robbery. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE


-12-